**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3672
_____

TREVOR MATTIS,
                                        Appellant

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS; M. OVERMYER;
GUSTAFSON; CUMMIINS; BEST; MEALY; HASPER; KENNEDY; SHEESLEY;
SGT. ANTHONY; MCNEELY; K-SMITH; J. WETZEL; CO  SMALL; SGT. GILARA;
BLICHA, ALL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL
CAPACITIES
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 1-16-cv-00306)
Magistrate Judge:  Honorable Richard A. Lanzillo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 5, 2020

Before: CHAGARES, Chief Judge, PHIPPS and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed March 2, 2022)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Trevor Mattis, a prisoner in the Pennsylvania correctional system, appeals from an order granting summary judgment to the defendants. We will affirm the District Court's[1] judgment.

I.

On December 21, 2016, Mattis filed a complaint pursuant to 42 U.S.C. § 1983 alleging that several prison officials and two prison medical providers violated his civil rights while he was incarcerated at the State Correctional Institution at Forest. His complaint centered on the revocation of his "z-code" status, which applies to inmates who need to be housed in a single cell rather than with a cellmate. An inmate's z-code status is reviewed annually to determine whether single-celling is still warranted. In late 2015, a Psychiatric Review Team ("PRT") met for Mattis's annual z-code review. The PRT determined that Mattis no longer needed to be celled alone and that his z-code status should be revoked. Mattis was notified and given 30 days to find a compatible cellmate, which he did not do. When corrections officers brought another inmate to Mattis's cell on March 30, 2016, Mattis attacked the inmate with a weapon. As a result, Mattis was moved to the Restrictive Housing Unit. Mattis claimed that the revocation of his z-code violated his Eighth and Fourteenth Amendment rights. He also claimed that he was denied medical care for conditions unrelated to the z-code matter.

---

[1] A Magistrate Judge presided over this case with the parties' consent.

The defendants filed motions to dismiss Mattis's complaint for failure to state a claim. The District Court dismissed the complaint in part,[2] allowing Mattis to proceed with the following claims: (1) Eighth Amendment claims against nine Department of Corrections ("DOC") defendants and the two medical defendants, (2) equal protection claims against three DOC defendants, and (3) state law tort claims against several DOC defendants and the medical defendants.

After the close of discovery, the defendants moved for summary judgment. The District Court granted the motion because (1) Mattis had failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA") with respect to his Eighth Amendment claims against most of the DOC defendants, as well as with respect to his equal protection claims against all of the DOC defendants; and (2) Mattis's exhausted Eighth Amendment claims lacked merit. The Court declined to exercise supplemental jurisdiction over his state law claims.

Mattis then filed a motion for reconsideration requesting that he be allowed to re-file supporting evidence that he had attempted to file earlier, but which was missing from the District Court record. The Court granted the motion but concluded that the additional evidence presented no basis to alter the judgment.

Mattis timely appealed.

II.

---

[2] We will not review this decision because Mattis does not challenge it on appeal. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016) (holding that arguments not developed in an appellant's opening brief are forfeited).

We have jurisdiction under 28 U.S.C. § 1291. We review the grant of summary judgment de novo, applying the same standard as the District Court. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper if, viewing the record in the light most favorable to Mattis, there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). We review the District Court's decision to refrain from exercising supplemental jurisdiction over Mattis's state law claims for an abuse of discretion. Bright v. Westmoreland Cty., 443 F.3d 276, 286 (3d Cir. 2006). We may affirm on any ground supported by the record. See Munroe v. Cent. Bucks Sch. Dist., 805 F.3d 454, 469 (3d Cir. 2015).

III.

First, Mattis argues that his failure to exhaust administrative remedies as to his Eighth and Fourteenth Amendment claims should be excused. Because we conclude below that Mattis's Eighth Amendment claims fail on the merits, we need not decide whether the District Court correctly ruled that he failed to exhaust them as to the defendants he did not name in his grievances. However, we disagree with Mattis's contention that he exhausted his Fourteenth Amendment claims.

The PLRA requires prisoners to exhaust available administrative remedies before bringing a suit alleging unconstitutional conduct by prison officials. 42 U.S.C. § 1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 84 (2006). The main purpose of this requirement is to alert prison officials to a problem and allow them to attempt to address it before litigation occurs. See Jones v. Bock, 549 U.S. 199, 219 (2007). Mattis's

4

Fourteenth Amendment claim is that other inmates (in particular, white inmates) were evaluated and assigned z-code status according to more lenient standards than were applied to him. He argues that he addressed this claim in two grievances. However, our review of the record reveals that neither grievance alleged discrimination.[3] See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009) (explaining that an equal protection claim requires allegations of "purposeful discrimination" (quoting Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990)). Thus, Mattis failed to exhaust his equal protection claims, and there is no basis in the record for excusing his failure to do so.

IV.

Mattis also argues that the District Court abused its discretion in refusing to address his "failure to prevent violence" claims against Defendants Gustafson, Cummins, and Hasper with regard to the revocation of his z-code status.[4] We disagree because the District Court did, in fact, address Mattis's claim and applied the correct law.

---

[3] The first grievance, Grievance No. 619908, explained that the prison administration had refused to accommodate Mattis's mental disabilities under the Americans with Disabilities Act, and had conspired to endanger him. See ECF No. 134 at 30. Mattis's second grievance, Grievance No. 619880, stated that, in revoking his z-code status, two of the defendants endangered his well-being and the well-being of his cellmate. See id. at 34. Moreover, the record contains a declaration from a DOC grievance officer, which states that Mattis did not raise claims of discrimination in any grievances that he appealed to final review. See ECF No. 102-4 at 3.

[4] The parties do not dispute that Gustafson, Cummins, and Hasper were involved in the decision to revoke Mattis's z-code status. However, the record establishes that the other DOC defendants were not responsible for the decision. Three of the defendants (Anthony, Kennedy, and Mealy) stated in their undisputed responses to Mattis's interrogatories that they did not participate in the decision to revoke Mattis's z-code

5

To establish a failure-to-protect claim, an inmate must demonstrate (1) that he is "incarcerated under conditions posing a substantial risk of serious harm," and (2) that the prison official acted with "deliberate indifference" to his health and safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Being ordered to share a cell with another inmate does not present a substantial risk of serious harm absent "other adverse conditions" that render double-celling unconstitutional. Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996); see also Rhodes v. Chapman, 452 U.S. 337, 347–50 (1981). To prove deliberate indifference, a claimant must show that an official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

The District Court interpreted Mattis's complaint to allege that Hasper, a certified mental health nurse practitioner, exhibited deliberate indifference to Mattis's serious medical needs. See ECF No. 128 at 21. The Court explained that the undisputed evidence showed that Mattis had received frequent and routine mental health treatments,

status. See ECF Nos. 102-5, 102-6, and 102-7. Two of the defendants (Best and Sheesley) had no contact with Mattis until after his z-code was revoked. See Complaint, ECF No. 3 at 104 (explaining that Best did not take over as Unit Manager until March 2016); Sheesley Response, ECF No. 102-8 (stating that Sheesley did not interact with Mattis regarding his z-code status until June 2016).

Moreover, Mattis's bare allegation that Defendant Overmyer was "fully informed" of his mental health needs is not sufficient to survive summary judgment. See Concise Statement of Facts, ECF No. 115 at 2. On appeal, Mattis has included answers to interrogatories from Overmyer that do not appear in the District Court record. We typically cannot consider evidence that is raised for the first time on appeal. In re Application of Adan, 437 F.3d 381, 388 n.3 (3d Cir. 2006). Besides, the evidence does not create a genuine issue of material fact. In his answer, Overmyer merely admitted that he was present during Mattis's z-code reviews in 2012 and 2013, but not that he was present for the review that resulted in the revocation of Mattis's z-code status in February 2016. See 3d Cir. ECF No. 25, Exh. B-25.

6

and that Hasper used his sound professional reasoning in recommending that Mattis's z-code be revoked. Mattis concedes the correctness of that conclusion. Mattis Br. at 10. Nonetheless, he argues that all three defendants failed to protect him from the violence that was a known, inevitable consequence of revoking his z-code status.

The evidence demonstrates otherwise. The record shows that the decision to revoke Mattis's z-code classification was made in accordance with standard prison procedures and following several mental health evaluations, which resulted in the defendants' determination that Mattis was stable and no longer needed to be single-celled. Moreover, the undisputed fact that Mattis was the *attacker* in the altercation that followed the revocation of his z-code status undermines Mattis's argument, which relies on cases that were brought by *victims* of violence at the hands of another prisoner, not the perpetrator of violence toward other inmates. See, e.g., Riley v. Jeffes, 777 F.2d 143, 145 (3d Cir. 1985) (inmate-plaintiff robbed by fellow inmate as a result of prison's open-cell policy). In short, there is no evidence that the defendants acted with deliberate indifference or disregarded an excessive risk that Mattis would be harmed from sharing a cell with another inmate.

V.

Mattis also argues that the District Court abused its discretion in failing to address his denial of medical care claim against Defendant McKeel, a prison medical provider. While the Court reviewed the evidence related to this claim, see ECF No. 128 at 8–10, it did not address it in its discussion. Nonetheless, the claim lacks merit.

7

To succeed on an Eighth Amendment medical needs claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). However, "mere disagreement as to the proper medical treatment" is insufficient to support an Eighth Amendment claim. Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). When medical care is provided, we "presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." Pearson, 850 F.3d at 535.

Mattis claimed (1) that his sick call requests were ignored for five weeks, during which time he was denied all medical care; and (2) that McKeel refused to treat his specific medical conditions, including flat feet and dry skin. However, he failed to allege that McKeel was responsible for the denial of medical treatment for the five-week period that his sick calls went unanswered. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."). Moreover, McKeel's undisputed declaration states that she did, in fact, treat Mattis's medical complaints on numerous occasions. See ECF No. 105-1. Thus, nothing in the record presents a genuine issue of material fact that McKeel denied Mattis medical care in violation of his Eighth Amendment rights.

VI.

Finally, we disagree with Mattis that the District Court abused its discretion in declining to exercise supplemental jurisdiction over Mattis's state law claims. "[W]here

8

the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (emphasis added). Mattis argues that unfairness resulted because the statute of limitation ran out while his claim was pending. However, 28 U.S.C. § 1367(d) provides that the limitation period for Mattis's state claims was tolled while those claims were pending in federal court. See Hedges v. Musco, 204 F.3d 109, 123–24 (3d Cir. 2000). Thus, the District Court's declination to hear Mattis's state law claims was appropriate.

VI.

For the above reasons, we will affirm the judgment of the District Court.