**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2310
_____

*ANTOINE CLARK, as personal representative for Angelo
Clark,
Appellant

v.

ROBERT COUPE, DOC Commissioner; PERRY PHELPS;
DAVID PIERCE; MAJOR JEFFREY CARROTHERS;
CAPTAIN  BURTON; CAPTAIN  RISPOLI;
CAPTAIN  WILLY; DR. WILLIAM RAY LYNCH; DR.
PAOLA MUNOZ; DR. DAVID YUNIS; RHONDA
MONTGOMERY; SUSAN MUMFORD; STEPHANIE D.
JOHNSON; CONNECTIONS COMMUNITY SUPPORT
PROGRAMS INC; STEFANIE STREETS; STEPHANIE
EVANS-MITCHELL; CAROL VODVARKA; CAROL
VANDRUNEN; LEZLEY SEXTON

*(Amended pursuant to Clerk's Order dated 2/1/22)
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-17-cv-00066)
District Judge: Honorable Richard G. Andrews
_____

Argued: March 30, 2022
_____

Before: RESTREPO, ROTH and FUENTES, *Circuit Judges*.

(Filed: November 28, 2022)

Dwayne J. Bensing [**ARGUED**]

Susan L. Burke
American Civil Liberties Union
100 West 10th Street
Suite 706
Wilmington, DE 19801

Chad S.C. Stover
Barnes & Thornburg
222 Delaware Avenue
Suite 1200
Wilmington, DE 19801
*Counsel for Appellant*

Ryan T. Costa [**ARGUED**]
Kenneth L. Wan
Office of Attorney General of Delaware
Delaware Department of Justice
6th Floor
820 North French Street
Carvel Office Building
Wilmington, DE 19801
*Counsel for Appellee*

Peter M. Slocum
Lowenstein Sandler
One Lowenstein Drive
Roseland, NJ  07068
*Counsel for Amicus Appellant National Disability Rights Network*

Daniel Greenfield
Northwestern Pritzker School of Law
MacArthur Justice Center
375 East Chicago Avenue
Chicago, IL  60611
*Counsel for Amicus Appellant Roderick & Solange MacArthur Justice Center*

Laura L. Rovner
Tempest Cantrell (law student)
Chris Nafekh (law student)
Katie Scruggs (law student)
University of Denver

Civil Rights Clinic
2255 East Evans Avenue
Suite 335
Denver, CO 80208
*Counsel for Amicus Appellants Richard Morgan and Dan Pacholke*

Brian Biggs
DLA Piper
1201 North Market Street
Suite 2100
Wilmington, DE 19801
*Counsel for Amicus Appellant Professors and Practitioners of Psychiatry Psychology and Medicine*

_____

OPINION OF THE COURT
_____

**RESTREPO**, *Circuit Judge*.

Angelo Clark, a prisoner diagnosed with manic depression and paranoid schizophrenia, brought an as-applied claim alleging his months-long placement in solitary confinement violated his constitutional rights.[1] The District Court dismissed the claim on qualified immunity grounds, finding Clark failed to allege the violation of a clearly established right. We must disagree. Clark alleged prison officials imposed conditions they knew carried a risk of substantial harm and caused him to suffer debilitating pain that served no penological purpose. Because these allegations trigger established Eighth Amendment protection, we will reverse the grant of qualified immunity and remand for further proceedings.

I.

---

[1] This Court received notice of Angelo Clark's death on January 21, 2022. His personal representative, Antoine Clark, was named appellant that same day.

3

A.    Factual Allegations

The District Court dismissed Clark's conditions of confinement claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In reviewing the dismissal, we accept all sufficiently pled allegations as true. *Mammana v. Federal Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019). Clark's allegations are summarized as follows:

While an inmate at the James T. Vaughn Correctional Center (JTVCC) in Delaware, Clark was placed in solitary confinement on or around January 22, 2016. Following an incident at mealtime involving another inmate, prison officials moved Clark to the Secure Housing Unit (SHU). App. 66, ¶ 50. By 2016, Clark had been treated for schizophrenia and bipolar disorder at the prison for at least ten years, a fact of which the prison officials were aware. App. 59, ¶ 5. Despite having few disciplinary "points" on his record and no security classification meriting solitary confinement, Clark remained in the SHU for seven months. App. 66, ¶ ¶ 50, 51.

Inside the SHU, Clark was alone in his cell except for three one-hour intervals per week. The SHU cells are approximately eleven by eight feet with solid doors and two four-inch-wide windows, one of which faced the hallway. App. 64, ¶ 39. The cell lights were on from approximately 6 a.m. to 11:30 p.m., which meant they were off for approximately six hours a day. Meals were delivered without human contact through a slot in the door. App. 59, ¶ 8.

Solitary confinement meant Clark was deprived of all opportunities to engage in "normal" human interaction; he was not allowed to work and prohibited from participating in educational programs or religious services. *Id*., ¶ 7. He was permitted only four phone calls and four visitors per month. App. 64, ¶ 40.

The JTVCC's policy regarding inmates in the SHU is that they must "earn their way out" by exhibiting appropriate behavior. App. 69, ¶ 68. While in isolation, Clark would "yell and bang on the door to get the attention of the [Department of Corrections] officials." *Id*., ¶ 69. Prison officials considered these outbursts and Clark's inability to "calm[ ] down" to be

4

disciplinary incidents and would punish him by extending his stay in the SHU. When Clark would question why he remained in the SHU for "months and months," prison officials would put him in the "naked room," an isolation cell where he was given an open smock for clothing. App. 67, ¶ 57.

For the seven months, Clark was trapped in a "vicious cycle" where his mental illness would cause behavior that was punished by conditions that furthered his mental deterioration. App. 61, ¶ 13. Clark's extended stay in the SHU worsened his mental illness and caused lasting harm. As a result of the isolation, Clark experienced "increased hallucinations, paranoia, self-mutilation, sleeplessness, and nightmares." App. 60, ¶ 12.

Commissioner of the Delaware Department of Corrections (DOC) Richard Coupe authorized Clark's placement in the SHU. JTVCC Warden David Pierce, who had the authority to veto and re-classify an inmate's housing status, kept Clark in the SHU for seven months despite knowing of his mental illness. According to the complaint, the DOC Policy Manual requires prison officials to "identify those prisoners whose conditions would be contrary to confinement in segregations, including prisoners with serious mental illness." App. 69-70, ¶ 72. Clark posits Commissioner Coupe and Warden Pierce failed to abide by the Manual's requirement to consider his mental illness in determining the cause of "the alleged rule violations" or the "appropriateness of sanction or the conditions or duration of the sanctions."[2] App. 70, ¶ 73.

Clark further alleges defendants Commissioner Coupe and Warden Pierce knew of the American Correctional Association (ACA) study on the effects of solitary confinement on seriously mentally ill inmates, the results of which were published in March 2016— two months after Clark entered the SHU and five months before he was released. The ACA

---

[2] Clark also alleged the DOC defendants "deliberately underbid [their] contract with [the] DOC with conscious disregard for the severe impact its lack of funding has on the health of Mr. Clark and other prisoners with [serious mental illness]." App. 78, ¶ 107(g).

recommended prisons implement measures to ensure the isolation would not exacerbate an inmate's mental illness.[3] App. 72, ¶ 84. Warden Pierce participated in the ACA study in 2015. The study's report singled out Warden Pierce, stating that he is not "open to change in regards to restrictive housing objective and classification regarding the mentally ill," and cited his authority "to over-ride decision[s] on classification and/or mentally ill treatment decisions." App. 75, ¶ 94.

The complaint avers the ACA study, the "other prior lawsuits" against the JTVCC, and the prisons officials' "familiarity with their own policy and practice" provided the DOC defendants with direct notice of the "extreme adverse effects" of holding seriously mentally ill inmates like Clark in solitary confinement.[4] App. 73, ¶ 86.

B. District Court Proceedings

Clark sued JTVCC prison officials, including Commissioner Coupe and Warden Pierce, under 42 U.S.C. § 1983. He alleged numerous constitutional violations that purportedly arose from his seven-month stay in the SHU. He

---

[3] Clark claimed the DOC defendants were made aware of the study because in 2015 Delaware State Representative J. J. Johnson, head of Delaware's House of Representatives Corrections Committee, introduced legislation to reform the DOC's use of solitary confinement. To prevent having Johnson advocate for such legislation, the DOC agreed to allow the ACA to conduct the study in Delaware's prisons. *Id.* ¶¶ 82, 83.

[4] Clark's other alleged sources of notice are the standards published by the National Commission on Correctional Health in 2008 that warned of the deterioration mentally ill inmates can experience if confined to conditions of "extreme isolation." App. 65, ¶ 44. Also, the American Psychiatric Association's position statement on solitary confinement for prisoners with mental illness opined that prolonged segregation should be avoided in light of the potential for harm. *Id.* ¶ 45. In 2012, the Association defined prolonged segregation as three to four weeks. App. 73, ¶ 87.

accused the defendants of inflicting cruel and unusual punishment in violation of the Eighth Amendment, providing inadequate medical care also in violation of the Eighth Amendment, conspiring to and engaging in retaliation against his mental illness in violation of his Fourteenth Amendment rights, and placing him in solitary confinement in violation of his due process rights. The prison officials moved to dismiss Clark's claims.[5] App. 78–83.

Parsing the Eighth Amendment claims, the District Court permitted Clark to proceed on allegations that the prison officials were deliberately indifferent to his serious medical needs while he was in solitary confinement and that his placement in the SHU was in retaliation for being mentally ill. After discovery, these claims went to trial and the jury reached a verdict in favor of the defendants. According to the verdict form, Clark failed to prove he was deprived of adequate medical care while in solitary confinement or that he was put there "because of" his mental illness. App. 723.

The District Court granted the defendants' motion to dismiss the conditions of confinement claim that we address now. In his initial complaint, Clark alleged that—as a mentally ill inmate—the conditions of solitary confinement placed him at risk for serious substantial harm, and the prison's practice of placing inmates with known mental illness in the SHU is done with deliberate indifference to the "serious mental health implications of long term confinement in isolation." App. 79, ¶ 113. Given the enhanced risk of substantial harm, Clark alleged this practice as applied to him constituted cruel and unusual punishment.

Following the magistrate's recommendation, the District Court dismissed the conditions of confinement claim on qualified immunity grounds. The court concluded the law did not support Clark's claim "that housing a mentally ill inmate in solitary confinement for long periods of time violates

---

[5] The State argues that claims regarding Clark's stays in the SHU prior to January 23, 2015—two years before he filed his complaint in District Court—are barred by the statute of limitations. We agree and will therefore only address the seven-month SHU stay starting in 2016.

a clearly established Eighth Amendment prohibition of cruel and unusual punishment." App. 4 (citing App. 108). Accordingly, it ruled the prison officials were immune from suit. This appeal addresses that ruling.

## II.

Before addressing the propriety of the dismissal, however, we must address whether Clark is legally barred from raising this claim given the jury verdict deciding his other Eighth Amendment claims.[6] The State broadly argues the instant appeal "is barred by the law of the case doctrine, collateral estoppel, and res judicata." Appellee Br., 26. We disagree.[7]

First, we must determine which of these doctrines provides the appropriate framework for addressing the reviewability of the instant appeal. Here, the District Court allowed two of Clark's three Eighth Amendment claims to proceed to trial; the third claim, the conditions of confinement claim before us now, was dismissed. After the jury's verdict deciding the two claims, the District Court entered a single judgment for the defendants on all claims.[8] This appeal followed that judgment.

---

[6] The District Court exercised subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have appellate jurisdiction over District Courts' final orders pursuant to 28 U.S.C. § 1291.

[7] Clark never addressed this issue of collateral estoppel in his opening brief because he never disclosed that the two other Eighth Amendment claims went to trial and were decided in the defendants' favor. The absolute omission regarding the outcome of his other claims was at best unhelpful and at worse obfuscation. We note Clark appealed the judgment but does not challenge the adjudication of his other claims. App. 21. The District Court's judgment as to those claims is therefore affirmed. App. 20.

[8] After deciding defendants' motion to dismiss the first amended complaint, the District Court granted Clark's motion to reconsider and allowed him to proceed with his retaliation

Collateral estoppel, also known as issue preclusion, addresses the effect a prior adjudication in a different case has on a current case; "it doesn't often have much to say about the preclusive effects of rulings within the framework of a continuing action." *Currier v. Virginia*, 138 S. Ct. 2144, 2154 (2018) (plurality decision) (internal citation and quotation marks omitted). Therefore, collateral estoppel does not apply when two rulings are made at different stages within the same proceeding. *United States v. Briseno*, 843 F.3d 264, 270 (7th Cir. 2016). Instead, the "[r]elitigation of issues previously determined in the same litigation is controlled by principles of the law of the case doctrine rather than collateral estoppel." *Hull v. Freeman*, 991 F.2d 86, 90 (3d Cir. 1993) (citation omitted). *See also United States v. Reyes-Romero*, 959 F.3d 80, 93 (3d Cir. 2020). Here, Clark's three Eighth Amendment claims arose from the same complaint and were ultimately resolved by the same judgment. Under Federal Rule of Civil Procedure 54(b), the District Court could have revisited its decision to dismiss Clark's conditions of confinement claim prior to issuing the final judgment. *See Filebark v. U.S. Dept. of Transp.*, 555 F.3d 1009, 1013 (D.C. Cir. 2009); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE, § 4478.1, at 660, 667 (3d ed. 2019). Accordingly, the dismissal of the conditions claim occurred at a different stage within the same proceeding. *See Brisneo*, 843 F.3d at 270. As a result, any binding effect the District Court's dismissal has on this appeal is controlled by the law of the case doctrine. *See Reyes-Romero*, 959 F.3d at 93.

---

claim, that he was placed in solitary confinement *because of* his mental illness. App. 16. In so doing, the Court reiterated its earlier ruling dismissing the instant conditions of confinement claim because "no clearly established law supports finding that housing a mentally ill inmate in solitary confinement is *per se* a violation of the Eighth Amendment." *Id.* at 13, 16. Post-trial, on June 10, 2021, the District Court entered a judgment dismissing the claims raised in the second amended complaint. Clark's notice of appeal, contesting the dismissal of the conditions of confinement claim, was filed July 9, 2021.

But the law of the case doctrine does not bar an appellate court from reviewing the propriety of the District Court's ruling. *Avitia v. Metro. Club of Chicago, Inc.*, 924 F.2d 689, 690 (7th Cir. 1991). Instead, it is this Court's function to review the decisions of the District Court. *Reyes-Romero*, 959 F.3d at 93 (citing *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016)). We are not bound by the District Court's decision to dismiss Clark's conditions of confinement claim and "owe no deference" to its findings beyond what the standard of review demands. *Id*. at 93.

Even if issue preclusion did apply, it would only bar the re-litigation of findings "truly essential" to the jury's verdict deciding Clark's other Eighth Amendment claims. *See Caver v. City of Trenton*, 420 F.3d 243, 259 (3d Cir. 2005). The jury's verdict was predicated on findings that Clark was not deprived of adequate medical care while in solitary confinement and was not placed in the SHU because of his mental illness. App. 723–24. The conditions of confinement claim, or what the District Court deemed the "per se" solitary confinement claim, exists independently of those decided at trial. The State's arguments to the contrary are not persuasive. Citing *Porter v. Pennsylvania Department of Corrections*, it argues the subjective element of a conditions of confinement claim, which requires proof that prison officials were deliberately indifferent "to inmate health or safety," necessarily involves re-litigating the issue of whether Clark received adequate mental health treatment in solitary confinement. 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Under the State's theory, adequate medical care is an essential element of Clark's conditions of confinement claim, which means the jury's finding that he received such care precludes review of the conditions claim's dismissal on appeal.

Such a finding would run contrary to this Court's precedent, which treats conditions of confinement claims as separate and distinct from challenges addressing access to medical care. In *Porter*, we recognized the viability of a claim alleging the "substantial risk of serious psychological and physical harm" posed by solitary confinement without identifying the absence of mental health treatment as a necessary element. 874 F.3d at 441-42 (citing *Williams v. Sec'y Pennsylvania Dep't of Corrs.*, 848 F.3d 549, 566–68 (3d

10

Cir. 2017)). In *Palakovic v. Wetzel*, we held allegations that solitary confinement was "inhuman for [Palakovic] in light of his mental illness" averred a viable conditions of confinement claim without discussing his access to mental health treatment. 854 F.3d 209, 226 (3d Cir. 2017). Accordingly, we conclude that the jury's verdict does not preclude our review of Clark's "per se" solitary confinement claim.[9]

Finally, "issue preclusion 'cannot apply when the party against whom the earlier decision is asserted did not have a full and fair opportunity to litigate that issue.'" *Reyes-Romero*, 959 F.3d at 93 (quoting *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 316 (3d Cir. 2019)). Clark's conditions of confinement claim was denied on qualified immunity grounds; the District Court concluded there was no clearly established right preventing the placement of a mentally ill inmate in solitary confinement for an extended period of time. Clark appealed this ruling at the first possible instance, after final judgment was entered dismissing his case. Given that he has not had a "full and fair adjudication" of this issue, he cannot be estopped from pursuing the conditions of confinement claim on appeal. *Id.* (quoting 1 Restatement (Second) of Judgments § 28(5)).

For these reasons, we reject the State's argument that the jury's verdict prevents this Court from reviewing the dismissal of his conditions of confinement claim. We now turn to whether that dismissal was proper as a matter of law.

_____

[9] Although not discussed by the State in its issue preclusion argument, the jury also determined that Clark was not placed in solitary confinement *because* he was mentally ill. As with the finding that he was not denied mental health care, we conclude this determination does not preclude this Court from addressing Clark's conditions of confinement claim. Why a prisoner is placed in solitary confinement is not an element in challenging that condition. This Court did not address the reasons behind Palakovic's thirty-day stints in solitary in finding that there was a viable Eighth Amendment claim. *See Palakovic*, 854 F.3d at 225–26. The jury's findings regarding why Clark was sent to the SHU does not preclude this Court from addressing the constitutionality of the conditions and length of his stay.

III.

We review *de novo* a district court's dismissal of a claim based on the defense of qualified immunity because it involves a pure question of law. *Walker v. Coffey*, 905 F.3d 138, 143 (3d Cir. 2018) (citing *McLaughlin v. Watson*, 271 F.3d 566, 570 (3d Cir. 2001)). Applying the same standard of a district court, a claim should survive a motion to dismiss if it contains sufficient factual allegations that, if accepted as true, "state a claim of relief that is plausible on its face." *Mammana*, 934 F.3d at 372 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing the claims, we must construe the complaint liberally and assume the veracity of all "well-pleaded factual allegations." *Iqbal*, 566 U.S. at 679.

IV.

Clark alleges his prolonged stay in solitary confinement, imposed by prison officials who knew he was mentally ill, caused him to suffer mental deterioration for no justifiable reason in violation of his Eighth Amendment rights. The District Court dismissed Clark's claim on the grounds of qualified immunity, concluding that the prison officials were shielded from liability because there was no clearly established law prohibiting a months-long placement of a seriously mentally ill inmate in solitary confinement. Viewing the specific allegations through the proper lens, however, leads us to a different conclusion. Established law at the time of Clark's SHU stay prohibited prison officials from imposing conditions that threatened a substantial risk of serious harm and inflicted such harm for no penological reason. Clark's allegations, liberally construed, give rise to a plausible claim that the circumstances surrounding his months-long stay in the SHU violated this established law. Accordingly, the District Court's Rule 12(b)(6) dismissal of the conditions of confinement claim was premature. Fed. R. Civ. P. 12(b)(6).

12

### A. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)) (per curiam). In assessing whether qualified immunity was properly granted, we engage in a two-part analysis: (1) whether the plaintiff sufficiently alleged a right had been violated, and (2) whether that right was clearly established when it was allegedly violated to the extent "that it would have been clear to a reasonable person that his conduct was unlawful." *Williams*, 848 F.3d at 557.

The District Court dismissed Clark's conditions of confinement claim based on the second part, finding no clearly established right, without addressing whether he sufficiently alleged a constitutional violation. We will do so now. Clark raised an as-applied challenge, alleging the particular conditions of his confinement violated his right to be free from cruel and unusual punishment. In defining the right allegedly violated, we assess whether Clark's allegations show the conditions he endured were cruel and unusual, rather than determine if he succeeded in alleging a broader claim that solitary confinement of a mentally ill inmate violates the Eighth Amendment.

### B. Constitutional Violation

"The Eighth Amendment 'prohibits any punishment which violates civilized standards and concepts of humanity and decency.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). The Supreme Court has interpreted this prohibition as "impos[ing] affirmative duties on prison officials 'to provide humane conditions of confinement.'" *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 832). To sufficiently allege prison officials violated his Eighth Amendment rights by imposing inhumane conditions, Clark's

13

complaint had to allege facts showing (1) the deprivation he endured was "sufficiently serious," and (2) the prison officials had "a sufficiently culpable state of mind." *Thomas*, 948 F.3d at 138 (quoting *Farmer*, 511 U.S. at 834).

The deprivation element is adequately pled when the allegations depict conditions where the inmate is denied "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Showing a substantial risk of harm is a less demanding standard than alleging conditions posing "a probable risk of harm." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

The second element is subjective and requires an inmate to sufficiently plead prison officials acted with deliberate indifference. *Farmer*, 511 U.S. at 834 (citations omitted). Deliberate indifference is effectively alleged where an inmate shows officials knew of, but disregarded, that the prison conditions posed "an excessive risk to inmate health and safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

As to the first element, this Court has previously held that factual allegations comparable to Clark's were sufficient to allege conditions that pose a substantial risk of serious harm. In *Palakovic*, a young man "diagnosed with a number of serious mental disorders" was repeatedly placed in solitary confinement for "30-day stints" during the thirteen months he spent in a Pennsylvania prison. 854 F.3d at 217, 225. Like Clark, Palakovic was severely isolated with limited opportunity for any social interaction during these stays. *Id.* at 217. Palakovic's parents, who brought the claim on their son's behalf, alleged prison officials knew the conditions of confinement "were inhumane for him in light of his mental illness" because the majority of the self-harm incidents occurred in the prison's solitary confinement cells. *Id.* at 225. Palakovic ultimately committed suicide in one of these cells. *Id.* at 217. This Court held Palakovic's parents sufficiently pled an Eighth Amendment claim by alleging prison officials

14

imposed conditions that posed a substantial risk of serious harm to their mentally ill son. *Id.* at 225-26.

In so holding, the *Palakovic* Court acknowledged "the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation." *Id*. at 225. Citing our decision in *Williams,* the *Palakovic* Court recognized "a growing consensus" that solitary confinement conditions can cause "severe and traumatic psychological damage" that in turn leads to high rates of self-harm or suicide in inmates who had spent time in solitary confinement. *Id.* It is "[a]gainst this backdrop of extremely serious and potentially dire consequences of lengthy exposure to the conditions of solitary confinement" that this Court assesses allegations of prison officials' deliberate indifference towards placing inmates with known mental illnesses in conditions of extreme isolation for extended periods of time. *Id.* at 226. Given this backdrop, Clark's allegations—that he was kept in conditions of almost complete isolation for seven months by officials who knew him to be seriously mentally ill—are sufficient to allege the requisite deprivation.

This brings us to the second element of a conditions of confinement claim, whether Clark sufficiently alleged the prison officials possessed a culpable state of mind. We conclude that he did. Clark claimed the DOC defendants were "well aware" that he was seriously mentally ill, given that he had been treated for schizophrenia and bipolar disorder at the prison for over ten years. App. 59, ¶ 5. He alleged they knew that placing him in solitary confinement would cause him to be "severely and adversely affected." *Id.* ¶ 6. According to Clark's complaint, the prison officials acted in complete disregard for their own policies and procedures, which require seriously mentally ill inmates to be closely assessed and evaluated before being placed in solitary confinement. App. 69-70, ¶¶ 72, 73. Clark further alleged these particular officials were made aware of the unjustifiable risk posed by their conduct by the ACA's investigation into the JTVCC's use of solitary confinement for mentally ill inmates. As noted, the investigation's results, published while Clark was in the SHU, directly criticized defendant Warden Pierce's practices and recommended fundamental changes to the conditions of

15

solitary confinement to alleviate any potential harm. App. 72, 75, ¶¶ 84, 94. Despite this purported awareness of his mental illness and the risk of serious harm, Clark alleged prison officials disregarded his pleas to leave the SHU and unnecessarily kept him there for seven months, causing his mental health to deteriorate. Clark alleged the months in isolation caused him to experience "increased hallucinations, panic attacks, paranoia, nightmares and self-mutilation." App. 75-76, ¶ 97.

Again, the *Palakovic* decision is illustrative. In both cases, the plaintiffs alleged the prison officials knew the inmates were mentally ill and that prolonged isolation posed a substantial risk of harm. In *Palakovic*, officials were provided notice by the prior incidents of self-harm that occurred in segregated housing and their knowledge of a pending investigation by the Department of Justice into the prison's use of solitary confinement. 854 F.3d at 217. Here, the alleged notice to prison officials was far more direct: the DOC's own internal policies required they consider Clark's mental illness in determining both the appropriateness and length of time spent in solitary confinement, and the results of a *completed* investigation concluded that defendant Warden Pierce and the JTVCC's use of isolation threatened the health of mentally ill inmates. Moreover, Clark alleged his symptoms were noticeably exacerbated by the isolation and prison officials responded by keeping him in the damaging conditions for seven months. Following *Palakovic*, we hold these allegations are sufficient to plead the DOC defendants possessed a culpable state of mind.

This Court has recognized "the increasingly obvious reality that extended stays in solitary confinement can cause serious damage to mental health." *Palakovic*, 854 F.3d at 226. *See also Porter*, 974 F.3d at 441 ("It is well established in both case law and scientific and medical research that prolonged solitary confinement . . . poses a substantial risk of serious psychological and physical harm."); *Williams*, 848 F.3d at 567–68 (citations omitted) (citing studies of inmates in solitary confinement documenting high rates of suicide and self-mutilation, which are "believed to be maladaptive mechanisms for dealing with the psychological suffering that comes with isolation."). Viewing Clark's complaint with this reality in

16

mind, we conclude his allegations that he was kept in solitary confinement by prison officials who were deliberately indifferent to the effects of prolonged isolation on his already severely compromised mental health are sufficient to raise a viable Eighth Amendment claim.

V.

Having held Clark sufficiently alleged a violation of his Eighth Amendment right due to the conditions of his confinement, we must now determine whether qualified immunity was properly awarded. This entails deciding if the particular right outlined in Clark's complaint was clearly established at the time of his stint in the SHU. The District Court ruled no established law was violated. We hold now that ruling was premature given the nature of his allegations. Because Clark sufficiently alleges the circumstances of his time spent in solitary confinement violated rights long protected by Eighth Amendment jurisprudence, we will reverse the grant of immunity and remand for further proceedings.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 248 (3d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted). "The ultimate question is whether the state of the law when the offense occurred" gave the prison officials "fair warning" that their conduct violated Clark's Eighth Amendment right. *Id*. at 247 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

To determine whether such "fair warning" existed, we search first for "factually analogous" cases in the Supreme Court, and then turn our inquiry to whether "binding opinions from our own Court" were in existence. *Peroza-Benitez*, 994 F.3d at 165 (citing *Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017)). If neither source provides relevant caselaw, we consider whether "a robust consensus of cases of persuasive authority in the Court of Appeals could clearly establish a right for purposes of qualified immunity." *L. R.*, 836 F.3d at 248.

17

Finally, "[w]e may also take into account district court cases, from within the Third Circuit or elsewhere." *Peroza-Benitez*, 994 F.3d at 166 (citing *L.R.*, 836 F.3d at 248).

Before searching for relevant caselaw, however, we must first identify the specific right Clark alleged was violated. Defining the contours of the right is critical to determining whether it was clearly established; we must define the right "at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). "This requires us to frame the right 'in light of the specific context of the case, not as a broad general proposition.'" *Peroza-Benitez*, 994 F.3d at 165 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). We define the right with specificity because only then can we determine whether "the violative nature of the [officials'] *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curium). We turn then to the complaint and the specific facts surrounding the alleged violation.

The District Court defined Clark's alleged right as prohibiting prison officials from "housing a mentally ill inmate in solitary confinement for long periods of time." App., 4. As so defined, the court held the complaint did not allege a violation of a clearly established Eighth Amendment right and dismissed the claim. But, given the facts averred in Clark's complaint, we find this characterization of the alleged right insufficiently specific. In defining the alleged right, the circumstances surrounding Clark's confinement in the SHU matters. The particularities of the prison officials' alleged conduct in imposing the seven-month stay must be considered when deciding whether qualified immunity was appropriate. *Mullenix*, 577 U.S. at 12 ("The dispositive question is whether the violative nature of the *particular* conduct is clearly established.") (internal quotation marks omitted).

Based on the allegations in the complaint, the *particular* conduct at issue was prison officials keeping Clark in solitary confinement for seven months despite knowing of his serious mental illness. He alleged these DOC defendants had been made aware of the devastating effects of the JTVCC's solitary confinement units and had direct notice that extended stays in the SHU "exacerbate the symptoms of mental illness for

18

prisoners and result in further deterioration of their mental health." App. 69, ¶ 67. He claimed he was kept in the SHU because the manifestations of his mental illness would be treated as "prison rule infractions," which resulted in increased punishment and additional time in the SHU. App. 60, ¶ 12; App. 69, ¶ 70. As noted earlier, Clark alleged complaining about his prolonged stay in isolation would result in his being sent to the "naked room," an isolation cell where he received only an open smock for clothing. App. 67, ¶ 57. His allegations included the assertion that the DOC defendants had the "authority and ability" to change their practices but deliberately did not do so, choosing instead to intentionally inflict "extreme emotional and mental distress" on him. App. 78, ¶¶ 108-09. Viewing these allegations in their totality, we modify the District Court's enunciation of the alleged right to: the right of a prisoner known to be seriously mentally ill to not be placed in solitary confinement for an extended period of time by prison officials who were aware of, but disregarded, the risk of lasting harm posed by such conditions.

In determining whether this articulated right was clearly established at the time of Clark's seven-month stay in the SHU, we broaden the scope beyond determining whether "the very action in question has been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Supreme Court does not require that earlier cases share the same or even similar facts for a right to be deemed clearly established; it is enough that the prior cases are "factually analogous." *Peroza-Benitez*, 994 F.3d at 165 (citing *Fields*, 862 F.3d at 361). Further, we must look at analogous cases with the understanding that this Court takes a "broad view of what constitutes an established right of which a reasonable person would have known." *Id.* at 166 (internal citations omitted). As a result, state officials can still receive fair warning that their conduct is violative even in "novel factual circumstances" never previously addressed in caselaw. *Hope*, 536 U.S. at 741. *See also al-Kidd*, 563 U.S. at 741 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

Here, Clark alleged facts that put the officials' conduct squarely in the purview of established Eighth Amendment law. By alleging prison officials imposed solitary confinement for

19

months, knowing the isolation carried a substantial risk of exacerbating his mental illnesses but keeping him there until he suffered serious harm, Clark alleged conduct that no reasonable corrections officer could conclude was constitutionally permissible. Two decades ago, this Court held prison conditions "may not be so brutal or unhealthy as to be in itself a punishment." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000). In assessing the conditions of segregated housing units, "[t]he touchstone is the health of the inmate." *Id.* at 364. While the law recognizes that prison officials are authorized to punish for disciplinary infractions, the Constitution forbids them to do so "in a manner that threatens the physical and mental health of the prisoners." *Id.* In *Young*, this Court recognized that determining the constitutionality of prison conditions is a heavily fact-specific inquiry, where the particular characteristics of the prisoner raising the challenge are taken into consideration. *Id.* at 365 (noting fact that prisoner was HIV-positive made unsanitary conditions "all the more revolting" given that he is "more susceptible to infection and disease"). Clark alleges months in the SHU were particularly dangerous for him because his mental illnesses made the extreme and prolonged isolation an inhumane condition, given his susceptibility to serious psychological injury. App. 78-79, ¶¶ 108, 112. *See also Palakovic*, 854 F.3d at 225 (holding conditions of solitary confinement were inhumane for Palakovic "in light of his mental illness").

Despite the threat of harm posed by isolation, we recognize that solitary confinement does not *per se* violate the Constitution "as long as the conditions of confinement are not foul, inhuman or totally without penological justification." *Young*, 960 F.2d at 364 (citing *Ford v. Bd. of Managers of New Jersey State Prison*, 407 F.2d 937, 940 (3d Cir. 1969)). But Clark alleges conditions that contravene those requirements. Even assuming Clark was initially placed in the SHU for a justified penological purpose, the "pronounced worsening" of his mental illness symptoms resulting from months in isolation was wholly pointless and unjustified. App. 58, ¶ 1; App. 79, ¶ 114. No penological purpose was served by irrevocably damaging Clark's already severely compromised mental health; the increased incidents of hallucinations or self-

20

mutilation resulting from the exacerbation of his schizophrenia and bi-polar disorder cannot be deemed a legitimate "part of his penalty" for committing a disciplinary infraction. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). We hold Clark's allegations give rise to the reasonable inference that prison officials imposed conditions resulting in the "gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976). At the time of Clark's stay in the SHU, imposing conditions that cause the "wanton and unnecessary infliction of pain" had long violated the Eighth Amendment prohibitions against cruel and unusual punishment. *Rhodes*, 452 U.S. at 347.

To constitute cruel and unusual punishment, however, the wanton and unnecessary infliction pain must be done knowingly. Over thirty years ago, the Supreme Court established that prison conditions do not violate the Eighth Amendment unless officials act with deliberate indifference in subjecting a prisoner to the risk of serious harm. *See Wilson*, 501 U.S. at 299 (holding violation of Eighth Amendment requires "obduracy and wantonness" rather than "inadvertence or error in good faith") (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Thus, to allege the violation of a clearly established right, Clark had to have sufficiently alleged the DOC defendants "recklessly disregard[ed]" the risk that his months in solitary confinement were inhumane in light of his serious mental illness. *Farmer*, 511 U.S. at 836. Clark alleged the officials knew the risks the SHU posed to him as a mentally ill inmate but did not respond reasonably to ensure his safety. Such unexplained inaction in the face of a known risk has long been held violative of the Eighth Amendment. *Id.* at 845. *See also Whitley*, 475 U.S. at 320-321 (holding prison measures that inflict unnecessary and wanton pain on prisoners, when no plausible explanation for such measures is provided, violate Eighth Amendment).

There is no indication in the complaint that prison officials imposed the prolonged term of solitary confinement for legitimate non-punishment reasons, such as for Clark's own protection or out of administrative necessity. *See, e.g., Gibson v. Lynch*, 652 F.2d 348, 354 (3d Cir. 1981) (holding no constitutional violation where three-month stay in solitary confinement was due to a "grave shortage of general

21

population cell space") (citing *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974)). Long before Clark's stay in the SHU, Eighth Amendment law prohibited officials from recklessly imposing conditions carrying a known risk to a prisoner's health for no justifiable reason. *Farmer*, 511 U.S. at 843-45. *See United States v. Lanier*, 520 U.S. 259, 271 (1997) (noting a "general constitutional rule" prohibits the wanton and unnecessary infliction of cruelty on prisoners).

Moreover, the subjective knowledge of a substantial risk of harm can be inferred from the objective circumstances of a prison's conditions if such conditions pose an obvious danger to the inmates. *Farmer*, 511 U.S. at 825. Here the risk was obvious because the harm inherent in conditions of solitary confinement has long been recognized. Indeed, the Supreme Court recognized the threat to prisoners' mental health over a century ago:

> A considerable number of prisoners fell, after even a short confinement, into a semi-fatuous condition, from which it was next to impossible to arouse them, and others became violently insane; others still, committed suicide; while those who stood the ordeal better were not generally reformed, and in most cases did not recover sufficient mental activity to be of any subsequent service to the community.

*In re Medley*, 134 U.S. 160, 168 (1890). This Court has long held that allegations of inflicting a serious mental injury are sufficient to state a claim under the Eighth Amendment. *White v. Napoleon*, 897 F.2d 103, 110–11 (3d Cir. 1990) (allegations that prison doctor's purposeful infliction of unnecessary emotional harm on inmate patients raises Eighth Amendment cause of action). Further, there was a general consensus among the Courts of Appeals preceding Clark's stay in the SHU that a threat of serious psychological injury invokes Eighth Amendment protection. *See, e.g.*, *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (serious or significant emotional injury resulting from conditions of confinement satisfies Eighth Amendment claim); *Thomas v. Farley*, 31 F.3d 557, 559 (7th Cir. 1994) (the infliction of mental torture has been the basis for viable cruel and unusual punishment claims in

22

prisoner cases); *Jordan v. Gardner*, 986 F.2d 1521, 1529 (9th Cir. 1993) (en banc) (severe psychological pain can violate the Eighth Amendment); *Scher v. Engelke*, 943 F.2d 921, 924 (8th Cir. 1991) ("fear, mental anguish, and misery" can cause sufficient pain to violate the Eighth Amendment). Clark alleged his pre-existing condition of serious mental illness heightened the impact of solitary confinement, rendering it capable of inflicting severe mental trauma. By claiming the prison officials knowingly imposed such conditions, Clark sufficiently alleged the violation of a clearly established right.[10]

In addition to violating the Eighth Amendment, Clark alleges the prison officials violated the Delaware DOC's own policies regarding the imposition of solitary confinement. Clark posits prison officials disregarded the policy by failing to "consider sufficiently the role mental illness played in . . . determining the appropriateness of sanctions or the conditions or duration of the sanctions." App. 70, ¶ 73. By alleging their indifference to prison procedure, Clark inferred the officials

---

[10] Clark's allegations that he was punished for complaining about the SHU by being sent to a "naked cell," where he was given an open smock for clothing and a mattress on the floor, App. 67, ¶ 57, could raise a viable claim of cruel and unusual punishment in and of itself based on a consensus of Courts of Appeals decisions. *See, e.g.*, *Porth v. Farrier*, 934 F.2d 154, 156 (8th Cir. 1991) (prima facie showing of Eighth Amendment violation where prison officials denied prisoner all clothing and bedding for twelve hours as a punitive measure); *Maxwell v. Mason*, 668 F.2d 361, 363 (8th Cir. 1981) (deprivation of clothing and bedding bear no relationship to security measure and therefore amount to an unnecessary infliction of pain in violation of Constitution); *McCray v. Burrell*, 516 F.2d 357, 367 (although conditions were intended to observe prisoner for self-harm, two days in isolation cell without clothing or bedding unconstitutional); *Wright v. McMann*, 387 F.2d 519, 521 (2d Cir. 1967) (complaint alleging solitary confinement cell where prisoner was naked and denied bedding of any kind was cruel and unusual punishment). *See also* U.S. Dep't of Justice, *Federal Standards for Prisons and Jails*, §§ 11, 14 (1980) (prisoners in disciplinary detention must be fully clothed).

knew but ignored the DOC's prohibition against his seven-month stay in segregation. Clearly established law dictated that such internal governing policies are relevant in determining whether the officials received fair warning of a potential constitutional violation. *See Hope*, 536 U.S. at 743–44 (recognizing Department of Corrections' regulations are relevant to determining whether prison officials had fair warning of constitutional violation); *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (noting prison regulations that govern correctional officers' conduct relevant in determining whether inmate's right was clearly established).

Allegations that the officials disregarded prison regulations while inflicting wanton pain provided sufficient grounds for the denial of qualified immunity at the complaint stage. *See Young*, 801 F.3d at 182 (in deciding whether prison officials were entitled to immunity on remand, district court instructed to determine whether punishment violated prison regulations). Indeed, the DOC policies become all the more relevant in determining whether officials had fair warning that their conduct "ran counter" to the Eighth Amendment given that few cases addressed the constitutionality of solitary confinement for seriously mentally ill prisoners at the time of Clark's stay in the SHU. *See Williams*, 848 F.3d at 571 (prison policy relevant to qualified immunity analysis because limited nature of case law in existence at time of term of segregation).

Clark alleges these officials received another warning that their conduct was potentially unconstitutional when they were sued in federal court. Two months after Clark entered solitary confinement, the District Court of Delaware ruled defendant Commissioner Coupe's alleged conduct of placing mentally ill inmates in solitary confinement, without adequate mental health treatment and out-of-cell time, raised a viable constitutional claim. *Cmty. Legal Aid Soc'y, Inc. v. Coupe*, No. 15-688-GMS, 2016 WL 1055741, at *2 (D. Del. Mar. 16, 2016) [hereinafter CLASI]. In that case, CLASI claimed Commissioner Coupe, who remained Commissioner of the DOC at the time of Clark's stay in the SHU, knew the prison's practice of keeping mentally ill inmates in solitary confinement would "exacerbate their symptoms of mental illness and cause serious harm to their mental and physical health." *Id.* at *1. The district court denied Coupe's motion to dismiss the claim,

24

ruling that CLASI's allegations rendered it plausible that Coupe "was aware that placing mentally ill patients in solitary confinement could deprive inmates in a manner that is 'objectively, sufficiently serious' [so] that Coupe would draw the inference that a 'substantial risk of serious harm exists.'" *Id.* at \*4 (internal citation omitted). While this decision did not create a clearly established right, Clark is correct that the *CLASI* decision provided JTVCC prison officials with direct notice that their conduct regarding solitary confinement potentially violated the Eighth Amendment. And yet, according to Clark, this targeted warning was disregarded, as evidenced by the fact he remained in solitary confinement for another five months.

The *CLASI* decision contains additional support for concluding Clark alleged the violation of a clearly established law. In this Court, decisions from district courts are relevant in determining whether prison officials received fair warning that their conduct was violative. *See Peroza-Benitez*, 994 F.3d at 167 (in the absence of "actually analogous precedent" from the Supreme Court or this Court, relevant and timely district court decisions can help determine whether the law was clearly established). *See also Doe v. Delie*, 257 F.3d 309, 321 n.10 ("[A]s our prior decisions have illustrated, district court opinions do play a role in the qualified immunity analysis."). The district court cases cited in the *CLASI* opinion provide a robust consensus of decisions specifically addressing the constitutionality of assigning mentally ill prisoners to solitary confinement: *Ind. Protection & Advocacy Servs. Comm'n v. Comm'r, Ind. Dep't of Corr.,* No. 1:05-cv-01317-TUP-MJD, 2012 U.S. Dist. LEXIS 182974, at \*60–61 (S.D. Ind. Dec. 31, 2012) (Indiana Department of Correction's practice of putting seriously mentally ill inmates in solitary confinement threatens permanent injury and violates the Eighth Amendment); *Jones "El v. Berge*, 164 F. Supp. 2d. 1096, 1101–02 (W.D. Wis. 2001) (granting injunctive relief because conditions of solitary confinement "can be devastating" to mentally ill prisoners housed in supermax prison); *Madrid v. Gomez*, 889 F. Supp. 1146, 1265-66 (N.D. Cal. 1995) (placement of mentally ill inmates "in the SHU is the mental equivalent of putting an asthmatic in a place with little air to breathe" and therefore unconstitutional); *Coleman v. Wilson*, 912 F. Supp. 1282, 1320-21 (E.D. Cal. 1995) (holding that prison's policies and

25

practices regarding segregating inmates with serious mental disorders violates the class members' Eighth Amendment rights); *Casey v. Lewis*, 834 F. Supp. 1477, 1549-50 (D. Ariz. 1993) (holding that Arizona prison officials' practice of assigning seriously mentally ill inmates to segregated housing "despite their knowledge of the harm" constitutes an "appalling" Eighth Amendment violation); *Langley v. Coughlin*, 715 F. Supp. 522, 540 (S.D.N.Y. 1988) (holding viable claim that prison officials' failure to "screen out" those inmates that "by virtue of their mental condition, are likely to be severely and adversely affected by placement there"). In this Court, these cases—cited in a decision ruling against the same Commissioner of the Delaware DOC that Clark named as a defendant for engaging in the same conduct Clark is challenging—are relevant in determining the state of the law.[11]

---

[11] In addition to those cited in the *CLASI* opinion, multiple district court decisions recognized the substantial risk of serious harm that faces mentally ill prisoners in solitary confinement and addressed the necessary changes to avoid such harm. *See Disability Advocs., Inc. v. New York State Off. of Mental Health*, No. 02 Civ. 4002 (GEL) (S.D.N.Y. Apr. 25, 2007) (settlement reached that all seriously mentally ill inmates housed in isolation were entitled to, inter alia, two hours per day of out-of-the cell programming given allegations that solitary confinement gave rise to increased self-mutilation); *Scarver v. Litscher*, 371 F. Supp. 2d 986, 1003 (W.D. Wis. 2005), *aff'd*, 434 F.3d 972 (7th Cir. 2006) (placing a mentally ill inmate in solitary confinement, marked by "conditions so lacking in physical and social points of reference," might reasonably lead to "a kind of psychological torture and future acts of self-harm"); *Coleman v. Brown*, 28 F. Supp. 3d 1068, 1109 (E.D. Cal. 2014) (ordering prison officials in California not to place any mentally ill prisoner in solitary "unless that class member's treating physician certifies that . . . the inmate's mental illness did not preclude the inmate from conforming his or her conduct to the relevant institutional requirements . . . [and] the inmate does not face a substantial risk of exacerbation of his or her mental illness or decompensation as a result of confinement in a SHU.").

Notice of clearly established law also came from Delaware's own state legislature. Had Clark's seven-month term in solitary confinement been imposed by a Delaware state court, it would have been illegal. Five years before Clark's stint in the SHU the Delaware legislature enacted a statute prohibiting courts from imposing a term of solitary confinement longer than three months. Section 3902 of the Delaware Code read in relevant part:

> In every case of sentence to imprisonment for a term exceeding 3 months, the court may by the sentence direct that a certain portion of the term of imprisonment, not exceeding 3 months, shall be in solitary confinement.

Del. Code. Ann. tit. 11 § 3902 (repealed 2021). This Court has consistently considered relevant state statutes when determining if the grant of qualified immunity is appropriate. *See Williams*, 848 F.3d at 570-71 (finding a related state statute "bear[s] on whether Plaintiff's due process rights were clearly established"). *See also Kane v. Barger*, 902 F.3d 185, 195 (3d Cir. 2018) (recognizing that officer's conduct resembled the statutory crime of indecent assault in denying qualified immunity); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211-12 (3d Cir. 2001) (denying qualified immunity for officer who shot dog after acknowledging state statute defined dogs as the owners' personal property). Here, the defendant prison officials were tasked with implementing the sentences imposed by Delaware state courts. Familiarity with the state's sentencing structures was therefore an integral part of Commissioner Coupe and Warden Pierce's responsibilities. The state of Delaware law at the time of Clark's stay in the SHU provided reasonable prison officials with fair warning that seven months in isolation—which was four months past the limit allowed by sentencing courts in the state of Delaware—was unlawful.

While these sources of notice do not, in and of themselves, clearly establish the law, they buttress the Eighth Amendment jurisprudence invoked by Clark's allegations. Both Supreme Court and this Court's precedents consider district court cases, prison regulations, and state statutes in determining whether officials received fair warning that their

conduct was unreasonable. Here, Clark alleged that the JTVCC's officials knew his prolonged stint in isolation posed a substantial risk to his mental health but imposed the conditions anyway, despite knowing serious pain resulted and that such pain served no penological purpose. Established Eighth Amendment law prohibited this alleged wanton and gratuitous infliction of pain, and the law in conjunction with other sources of notice warned prison officials that their purported conduct was unlawful.

## VI.

Given the specific conduct alleged and the warnings of potential misconduct provided the defendants, we conclude further proceedings are warranted. The District Court's grant of qualified immunity was premature in light of the possible Eighth Amendment violation. In so holding we are mindful that the allegations in Clark's complaint may be disproven during discovery, rendering the prison officials' conduct appropriate. In allowing Clark's claim to proceed we do not "assume that state legislatures and prison officials are insensitive to the requirements of the Constitution or to the perplexing sociological problems of how best to achieve the goals of the penal function in the criminal justice system." *Rhodes*, 452 U.S. at 352. To this end, we recognize it is possible there were exigent circumstances and legitimate penological justifications for Clark's seven-month stint in solitary confinement that would lead to the conclusion that no clearly established right was violated. *See Wilson*, 501 U.S. at 301–02 (1991) (approving state-of-mind inquiry to allow defense that prison officials lacked the subjective intent to punish). Allowing the claim to proceed acknowledges that Clark, by alleging his prolonged stay in solitary confinement was the result of prison officials knowingly disregarding the substantial risk of serious harm posed by the conditions and the foreseeable harm inflicted was in no way penologically justified, alleged the violation of a clearly established right.

Accordingly, we will reverse the order of the District Court dismissing this claim and remand for further proceedings.