**James RILEY, Appellant,**

v.

**Glen R. JEFFES, et al.**

**No. 84–5738.**

United States Court of Appeals, Third Circuit.

Submitted Pro Se July 17, 1985.

Decided Nov. 21, 1985.

---

**2.** Maj. op. p. 142, n. 6.

James Riley, pro se.

Leroy S. Zimmerman, Atty. Gen., Maura A. Johnson, Deputy Atty. Gen., Andrew S. Gordon, Sr. Deputy Atty. Gen., Allen C. Warshaw, Chief Deputy Atty. Gen., Harrisburg, Pa., for G. Jeffes, et al.

Before WEIS, HIGGINBOTHAM and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal by the plaintiff, James Riley, is from a judgment of the district court dismissing his pro se civil rights complaint [1] concerning conditions of confinement in a state correctional institution. The complaint alleged that the defendants' policy of allowing inmates to possess and use keys to cell door lock bars violated his federal eighth and fourteenth amendment rights.[2] In addition to damages, the plaintiff sought injunctive relief.[3] We affirm the district court's judgment in dismissing plaintiff's fourteenth amendment claims, but vacate the judgment insofar as it dismissed the eighth amendment claim.

---

1. The defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion to dismiss, but entered summary judgment for the defendant.

2. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This court has jurisdiction over the district court's final judgment under 28 U.S.C. § 1291.

3. Plaintiff alleges in his complaint that he filed administrative complaints and appeals, and exhausted all reasonable administrative remedies, but that they were inadequate to protect his constitutional rights. He also filed his first set of interrogatories to the defendants on September 4, 1984, the same day that defendants filed a timely motion to dismiss. The district court stayed discovery until it had ruled on the motion to dismiss.

## I.

Plaintiff, an inmate at the State Correctional Institution at Huntingdon, Pennsylvania (Huntingdon), filed his complaint pursuant to 42 U.S.C. § 1983 and alleged that in March 1984 his cell was robbed by a fellow inmate. Plaintiff asserted this robbery, as well as numerous fights and assaults among prisoners, resulted from defendants' practice of giving security lock keys to inmates and allowing dangerous inmates to have control and possession of keys and to keep cell block doors open. The plaintiff also alleged that as a result of the prison practice he suffers mental and emotional distress because of his fear of being assaulted while he is asleep in his cell.

As the district court noted, a section 1983 action requires that (1) the conduct complained of must be committed by a person acting under color of state law and, (2) it must have deprived the plaintiff of a right or privilege secured by the Constitution or the law of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). The defendants contended neither in the district court nor in this court that the plaintiff has failed to state facts sufficient to satisfy the first element of his section 1983 action. The district court did not find otherwise. The defendants, however, contend here, as they did in the district court, that Riley has failed to state a deprivation of either his eighth or fourteenth amendment rights under the facts presented in his complaint.

We are sensitive to the delicate role of the federal courts in the complex matters pertaining to the administration, control, and operation by the states of their penal systems and their prisons, an area traditionally within their domain. *See Procunier v. Martinez*, 416 U.S. 396, 404–05, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974); *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973). "But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution." *Pro-*

*cunier v. Martinez*, 416 U.S. at 405, 94 S.Ct. at 405. The eighth amendment of the federal constitution prohibits any punishment which violates civilized standards and concepts of humanity and decency, *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 296, 50 L.Ed.2d 251 (1976), and "any punishment which is repugnant to the conscience of mankind." *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 471, 67 S.Ct. 374, 380, 91 L.Ed. 422 (1947) (Frankfurter, J., concurring), quoted in *Estelle v. Gamble*, 429 U.S. at 105, 97 S.Ct. at 291. "When prison officials have failed to control or separate prisoners who endanger the physical safety of other prisoners and the level of violence becomes so high ... it constitutes cruel and unusual punishment." *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir.1981), quoting *Jones v. Diamond*, 636 F.2d 1364, 1374 (5th Cir.) (en banc), *cert. granted*, 452 U.S. 959, 101 S.Ct. 3106, 69 L.Ed.2d 970, *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981).

As the court observed in *Marchesani v. McCune*, 531 F.2d 459, 462 (10th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976), "[m]any prisoners are unpredictable. Prison setting is, at best, tense. It is sometimes explosive, and always potentially dangerous." The tension and danger to prisoners must be particularly intensified and pervasive where an overpopulated prison is occupied by aggressive felons prone to violence, as alleged in this case, who also have ready access to cells when the occupants are asleep and are unprotected by prison guards. Riley complains that in this kind of environment, with access to his cell almost at will by aggressive inmates, he is compelled to live in constant anxiety, fear, and tension. The conditions of his confinement promote a lack of personal safety which is enhanced by the alleged "deliberate indifference," *Estelle v. Gamble*, 429 U.S. at 106, 97 S.Ct. at 292, of the supervisory personnel to the prisoner's protected interests. In *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 398 (1984), the Court observed that prison administrators "are under an obligation to take reasonable measures to

guarantee the safety of the inmates themselves."[4] The Seventh Circuit Court of Appeals has recently held that "[d]eliberate indifference on the part of prison officials to violent attacks and sexual assaults by other inmates is proscribed by the eighth amendment." *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir.1985). *See Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

Plaintiff's complaint alleged generally that "many fights between inmates and stabbing occured [sic] while inmate cell doors were left open." It also alleged that his cell was opened by an inmate and robbed on March 22, 1984, and that inmates are given keys "from 6:30 A.M. until 8:30 P.M. without reasonable nor [sic] adequate security supervision and often times no correctional officer is around nor [sic] near cell areas when inmates use the keys to open other inmates' cells." Paras. 5 and 14 of complaint. The prison practice, plaintiff avers, allows other inmates "easy access to plaintiff's cell while he is sleeping" and as a result, "for the past six months plaintiff had to live under extremely dangerous conditions of life-threatening nature, robberies, assaults, thefts, homosexual activities, fights, stabbings." Paras. 2 and 15 of complaint.

Huntingdon is a maximum, medium, and minimum facility with a normal capacity of 1,370.[5] As of December 31, 1984, the State confined 1,950 male felons within its walls, 142 percent of its normal capacity.[6] Plaintiff alleges that in the "A" block of the prison to which he is assigned, there are approximately 180 cells and 360 inmates (all double celled) located upon two separate sides of the entire block area. Para. 11 of complaint. He further avers: "One cell block area is completely cut off from the central desk vision, observation and view; while most of the other side on higher tier levels (each side is three tiers high and approximately 75 yards length) is also blocked from security supervision." Para. 12 of complaint.

The complaint further alleges that the defendants, Sergeant Lear and Sergeant Schaefer, both act personally as A-block supervisors and personally have instructed and permitted prison inmates to possess and use keys to open cell door lock bars and "are not doing anything to adequately protect plaintiff and other inmates from other highly aggressive and assaultive type inmates ... and neither Lear nor Schaeffer are up on the high level tiers and cannot adequately see nor have clear vision to observe what is happening." Para. 2 of complaint. He alleges they are totally indifferent toward plaintiff's safety, welfare, and well-being.

As for the defendants, Fulcomer, Wicker, Zumpetta, and Morder, plaintiff alleges that they are "high" prison officials having the responsibility and duty to take affirmative corrective action, but each has shown "total indifference" to the problem. Plaintiff asserts that Emanuel Wilkes and Anthony Zumpetta, Deputy Superintendents at Huntingdon, were both personally aware of the "daily life threatening situation" there. Para. 16 of complaint. Plaintiff charges that the defendants have acted willfully and intentionally in violation of his

---

4. The Court, in this connection, examined prison statistics on the magnitude of the problem of violent crime in our nation's prisons, noting: During 1981 and the first half of 1982, there were over 120 prisoners murdered by fellow inmates in state and federal prisons. A number of prison personnel were murdered by prisoners during this period. Over 29 riots or similar disturbances were reported in these facilities for the same time frame. And there were over 125 suicides in these institutions. See Prison Violence 7 Corrections Compendium (Mar. 1983). Additionally, informal statistics from the U.S. Bureau of Prisons show that in the federal system during 1983, there were 11 inmate homicides, 359 inmate assaults on other inmates, 227 inmate assaults on prison staff, and 10 suicides. There were in the same system in 1981 and 1982 over 750 inmate assaults on other inmates and over 570 inmate assaults on prison personnel. —— U.S. at ——, 104 S.Ct. at 3199.

5. Pennsylvania Department of Corrections, 1984 Annual Statistical Report 8.

6. *Id.*

eighth amendment constitutional rights against cruel and unusual punishment.

The district court concluded that the mere fear of assault from which Riley suffers did not constitute cruel and unusual punishment. Even after a prisoner has been assaulted, a section 1983 action does not lie against prison officials, the district court held, unless it can be established that they had actual or constructive knowledge that such an attack would take place. The court thereupon granted the defendants' motion to dismiss Riley's eighth amendment claim. What the district court overlooked, however, was that the plaintiff, a confined prisoner, alleged he had to live day in and day out with a very real and persistent fear of personal injury from constant threats of violence and sexual assault in his cell from other inmates, and the defendants were totally indifferent to his safety.[7]

An inmate's right to be protected from constant threats of violence and sexual assault from other inmates does not require that he wait until he is actually assaulted before obtaining relief. *Ramos v. Lamm*, 639 F.2d at 572, citing *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir.1973). *See Walsh v. Brewer*, 733 F.2d 473, 476 (7th Cir.1984). To obtain relief, an inmate must show "a pervasive risk of harm to inmates from other prisoners," *Woodhous v. Virginia*, 487 F.2d at 890, and that the prison officials have displayed "deliberate indifference" to the danger. *Estelle v. Gamble*, 429 U.S. at 106, 97 S.Ct. at 292.[8] In construing the eighth amendment, the *Benson* court noted: "The eighth amendment duty articulated in *Estelle* has not been limited to elementary services necessary to protect inmates' health. The state also has a duty to protect inmates from unwarranted physical injury." 761 F.2d at 339. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." *Shrader v. White*, 761 F.2d 975, 978 (4th Cir.1985), *quoting Withers v. Levine*, 615 F.2d 158, 161 (4th Cir.1980).

We believe that the allegations of plaintiff's complaint, construed liberally in light of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), state a claim of violation of the eighth amendment.[9] The

---

**7.** The suggestion of the dissent, p. 149, that the exposure of the plaintiff to assaults in his cell is no different from assaults that occur in "mess halls, exercise area, shops and library" is not realistic. When a prisoner is in his cell, he is usually alone, he may be asleep or ill, and he may be off-guard. When he is in the mess hall or other open areas, he is generally in the presence of other prisoners, awake, and on his feet, and therefore much less prone to attack.

**8.** We believe the plaintiff's allegation that the prison officials are "totally indifferent" to the life-threatening conditions at Huntingdon is sufficient to make out an eighth amendment claim, either under the "deliberate indifference" test of *Estelle* or under the "wanton and unnecessary" language of *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), adopted by the dissent. The *Rhodes* Court quoted *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (plurality opinion), a death penalty case, for the proposition that "the Eighth Amendment prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain.'" 452 U.S. at 346, 101 S.Ct. at 2398. Although the *Rhodes* Court dealt with double celling, *Gregg* did not involve prison conditions.

The *Rhodes* Court discussed the *Estelle* test approvingly. 452 U.S. at 347, 101 S.Ct. at 2399. In finding that double celling made necessary by an unanticipated increase in prison population did not constitute cruel and unusual punishment, the Court gave weight to the fact that double celling did not "increase violence among inmates or create other conditions intolerable for prison confinement." 452 U.S. at 348, 101 S.Ct. at 2400. By contrast, the plaintiff in the present case makes specific allegations that the practice of leaving cell doors unlocked without adequate protection exposes prisoners in the open cells to violence from aggressive prisoners and makes conditions intolerable.

We do not see that any distinction may profitably be drawn between deliberate indifference and wanton indifference.

**9.** The Court's statement in *Haines v. Kerner*, 404 U.S. at 520, 92 S.Ct. at 595, in reversing the district court and the court of appeals, is particularly apt here: "Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allegations such as those asserted by petitioner, however inartfully

plaintiff has alleged a pervasive risk of harm to inmates from other prisoners and that the prison officials have failed to exercise necessary care to protect the safety of the inmates.

In *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir.1976), this court held that where a pro se pleading alleges specific facts, it should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*, quoting *Haines v. Kerner*, 404 U.S. at 520, 92 S.Ct. at 595. On the other hand, if a plaintiff presents only vague and conclusory allegations, the complaint should be dismissed. *Rotolo*, 532 F.2d at 922.

■ The complaint in this case alleges specific facts relating to the robbery of the plaintiff on March 22, 1984, the possession and control of the cell block keys by other inmates, stabbings, sexual assaults, and other violence among inmates, and the lack of observation by supervisors and guards. For the purpose of the motion to dismiss, the allegations in the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *see Haines v. Kerner, supra.* They are in no manner comparable to the lack of specificity in *Rotolo*. Furthermore, the *Rotolo* court held that plaintiff should be given the opportunity to amend his complaint to allege specific facts.

We therefore conclude that the allegations in plaintiff's complaint were not vague and conclusory and that they alleged a set of facts which, if proven, would have entitled the plaintiff to relief under the eighth amendment. Neither the district court nor this court construes the complaint to have alleged that the prison policy infringed on the prisoner's liberty interest under the fourteenth amendment.

## II.

■ Plaintiff's fourteenth amendment claim apparently is based on a contention that the robbery of his cell resulted from the prison policy of allowing inmates to possess keys to cell doors, and that this policy therefore caused him to be deprived of property without due process. The district court concluded that plaintiff's claim was not cognizable under 42 U.S.C. § 1983, because state law provides a post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981).

The Supreme Court held in *Parratt* that a cause of action for money damages by an inmate against prison officials for deprivation of property under color of state law occurring as a result of random and unauthorized acts will not lie where the state law affords a post-deprivation remedy for such acts. *Parratt*, 451 U.S. at 543, 101 S.Ct. at 1916. In *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir.1975), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), plaintiff alleged that his cell had been robbed after his cell door was accidentally left open by a guard. The court held that "the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment." *Bonner*, 517 F.2d at 1319, *quoted in Parratt v. Taylor*, 451 U.S. at 542, 101 S.Ct. at 1916.

The language of plaintiff's complaint suggests that keys were not furnished to inmates pursuant to established state policy but as a result of the misconduct of defendants Lear and Schaeffer. Plaintiff alleges that keys are not furnished to inmates at other institutions, and refers to the "actions of Lear and Schaeffer." Whether the loss Riley suffered in his cell theft occurred because of negligent or intentional disregard for the safety of his property is immaterial under *Hudson v. Palmer*, —— U.S. at ——, 104 S.Ct. at 3203. The district court, therefore, correctly held that plaintiff's complaint failed to state a claim under the Due Process Clause of the fourteenth amendment.

pleaded, are sufficient to call for the opportuni-    ty to offer supporting evidence."

### III.

Accordingly the judgment of the district court will be affirmed insofar as it dismissed plaintiff's claim for damages under the fourteenth amendment. The judgment of the district court will be vacated with respect to plaintiff's claim under the eighth amendment and the cause will be remanded to the district court for further proceedings not inconsistent with this opinion.

WEIS, Circuit Judge, dissenting.

The plaintiff prisoner contends that he is fearful of being assaulted by inmates who have access to his cell during the daylight hours, 6:30 a.m. to 8:30 p.m. He, however, has not alleged that he has been assaulted or actually threatened. In addition, he has not been subjected to a deprivation of property, except for one incident when his cell was robbed, apparently when he was absent.

The complaint alleges that "access to inmates cells is through the pulling of a cell-door bar lock which once pulled opens every cell door for access (entry or exit) on the entire tier range." The plaintiff's allegations are not clear, but apparently the designated inmates do not have keys to individual cell doors. It seems that certain prisoners are given access to a "cell door bar," which when pulled can lock or unlock all cells on the "A" block tier.[1]

In his brief, plaintiff tells us that one inmate's nose was broken when he was assaulted in his cell in 1984. In the following year another prisoner had two teeth knocked out. Plaintiff, however, does not argue that the assaults were caused by prison conditions or that the incidents were any different from those which occurred in other parts of the prison, i.e., mess halls, exercise area, shops, and library. In short, the plaintiff's eighth amendment claim is based on a generalized fear for his safety because the cells are not kept locked during the daylight hours when inmates presumably are permitted to move to designated areas within the prison.

From an eighth amendment standpoint, I see no difference between the complaint that plaintiff makes here and the situation where all cells are opened during the daylight hours. The decision to leave cells open during the day or to allow limited access by certain inmates is a matter of internal administration. The traffic problems and security concerns involved in the movement and control of more than 1,000 inmates in a limited area obviously are details within the discretion of prison officials. *See Bell v. Wolfish,* 441 U.S. 520, 551, 99 S.Ct. 1861, 1880, 60 L.Ed.2d 447 (1979).

Violence is unfortunately too common in prisons, and at times prisoners are justifiably apprehensive; however, such conditions do not themselves establish mental distress which will constitute cruel and unusual punishment. If the mere fear or threat of assault is sufficient to raise a federal constitutional violation, then every inmate in every prison and jail in this country would have a viable eighth amendment claim.

*Davidson v. O'Lone,* 752 F.2d 817 (3d Cir.1984), (in banc), *cert. granted sub nom., Davidson v. Cannon,* — U.S. —, 105 S.Ct. 2673, 86 L.Ed.2d 692 (1985) presented a somewhat similar issue. In that case, the plaintiff inmate filed a § 1983 action against prison officials for negligently failing to take reasonable steps to protect him from another prisoner. In discussing the responsibility of prison officials under § 1983, we stated that liability could be imposed "even when the assault has been committed by another prisoner, if there was intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials." *Id.* at 828. We thus reviewed the officials' conduct under the deliberate indifference standard of care applicable to an

---

1. This case illustrates once again the problems presented by defense motions for dismissal under Fed.R.Civ.P. 12(b)(6), which requires the courts to assume the truth of allegations in the complaint. Particularly, in *pro se* matters such as this, the courts would be aided by factual information which would present these cases in a proper perspective.

eighth amendment claim as articulated by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See O'Lone*, 752 F.2d at 829 n. 9.

In *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), the Supreme Court rejected an alleged eighth amendment violation stemming from the use of double celling. The Court noted that "there is no evidence that double celling under these circumstances either inflicts unnecessary or wanton pain or is grossly disproportionate to the severity of crimes warranting punishment." *Id.* at 348, 101 S.Ct. at 2400. The Court cautioned lower federal courts to "bear in mind that their inquiries 'spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.'" *Id.* at 351, 101 S.Ct. at 2401, quoting *Bell v. Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874. In addition, the Court noted that "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." 452 U.S. at 349 n. 14, 101 S.Ct. at 2400 n. 14.

The complaint in the case at hand does not satisfy the requirements for an eighth amendment violation set forth in *Rhodes v. Chapman*, *Bell v. Wolfish*, and *Davidson v. O'Lone*. Whether plaintiff has a cause of action under state statutory or common law has not been presented here.

In the wake of *Rhodes*, the Court of Appeals for the Fourth Circuit has modified *Withers v. Levine*, 615 F.2d 158 (4th Cir.1980), and *Woodhous v. Virginia*, 487 F.2d 889 (4th Cir.1973)—cases cited favorably by the majority here. In *Shrader v. White*, 761 F.2d 975 (4th Cir.1985), the court acknowledged that its previous reasonable care standard was no longer applicable. Because the Supreme Court had adopted a more restrictive eighth amendment standard, the court of appeals said "The eighth amendment prohibits punishments which involve the unnecessary and wanton infliction of pain." *Id.* at 980. Hence, the court approved the trial court's

conclusion that fear of attack must "result in significant mental pain to be of constitutional dimensions." *Id.* at 979.

In *Shrader*, the court also noted the inevitability of violence by inmates and the difficulty of its prevention. The court further observed that the methods used by prison administrators to protect prisoners from one another are often condemned as cruel and unusual by the same inmates who later complain about the lack of protection. The prisoners in *Shrader* also complained about cell locks but the court dismissed that contention stating, "Any locking system for a prison cell will produce complaints from inmates who might prefer something different." *Id.* at 982.

Although the complaint in this case may, perhaps, have described a procedure that is undesirable or even negligent, I am convinced that it has not presented a claim that rises to the level required to establish an eighth amendment violation. I would affirm the order of the district court.