# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kyle Rainey,                  :
            Appellant     :
                           :
       v.                    :
                           :
Kevin Ransom, Richardo Contreras,    :
Jasen Bohinski, Frank Depiero,       :   No. 528 C.D. 2023
Michael Goyne, and Richard Keller    :   Submitted: June 6, 2024

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                      FILED: July 11, 2024

Kyle Rainey (Rainey), *pro se*, appeals from the October 28, 2022 order of the Court of Common Pleas of Luzerne County (trial court) granting a motion to dismiss filed by Appellees[1] and dismissing Rainey's petition for writ of *habeas corpus* (Petition).[2] Upon review, we affirm.

---

[1] Appellees include Kevin Ransom, Superintendent of the State Correctional Institution at Dallas; Jasen Bohinski, Deputy Superintendent; Richardo Contreras, Deputy Superintendent; Frank Depiero, Unit Manager; Michael Goyne, "Major of Unit Managers"; and Richard Keller, Counselor. *See* Petition for Writ of *Habeas Corpus* (Petition), Cover Page; Appellees' Br. at 4.

[2] Rainey filed a second petition for a writ of *habeas corpus* on June 21, 2022. Original Record (O.R.), Petition for Writ of *Habeas Corpus*, 6/21/22. The second petition consists of a standard form for petitions for writs of *habeas corpus*, in which Rainey merely referenced an attachment (the Petition). *See id.* at 5. As the second petition did not add substantively to Rainey's request, and for the sake of concision, Rainey's requests for *habeas corpus* relief are collectively referred to herein as the "Petition." *See id.*

# I. Background

In February 2022, Rainey, an inmate at the State Correctional Institution at Dallas, after refusing an order to move to a "double cell," received a misconduct and was placed in disciplinary custody in the "RHU" (restricted housing unit).[3] *See* Original Record (O.R.), Petition at 2-3. In March 2022, Rainey's status was reduced to "cell restriction." *See id.* at 3. However, Rainey again refused to move to a "double cell," received another misconduct and was returned to the restricted housing unit. *See id.* Also in March 2022, Rainey requested "AC" status[4]

---

Rainey requested and was granted permission to proceed *in forma pauperis* on May 20, 2022. *See* O.R., Br. in Supp. of Mot. to Dismiss, 7/20/22 at 1.

[3] "RHU" presumably refers to the Restricted Housing Unit, which is

> [a] special housing unit in the facility that provides a safe and secure setting for inmates placed in Disciplinary Custody for up to 90 days per misconduct charge when found guilty of Class 1 misconduct. The Restricted Housing Unit . . . includes Administrative Custody, a separate special non-disciplinary housing providing closer supervision, control and protection for inmates.

*See Commonly Used Terms in Prisons*, PENNSYLVANIA COALITION AGAINST RAPE, available at https://pcar.org/sites/default/files/resource-pdfs/prea_commonly_used_terms_in_prisons.pdf (last visited July 10, 2024). An inmate in the Restricted Housing Unit is afforded only limited periods of time outside of his or her cell. *See* Testimony of the Deputy Secretary of the Pennsylvania Department of Corrections before the House Judiciary Committee, August 2, 2010, available at https://www.legis.state.pa.us/WU01/LI/TR/Transcripts/2010_0123_0001_TSTMNY.pdf (last visited July 10, 2024).

[4] AC status presumably refers to "Administrative Custody (AC) status," which may be utilized for inmates "whose presence in general population would constitute a threat to life, property, himself/herself, staff, other inmates, the public or the secure or orderly running of the facility." *See Understanding DOC Administrative Policies*, available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/Understanding-DOC-Administrative-Policies.pdf (last visited July 10, 2024).

due to his "PREA[5] abuse in juv[enile placement] and trauma." *See id.* Rainey's request was denied. *See id.* Rainey averred that he was on the "mental health roster" at this time and that he was placed on "suicide watch" from March 7, 2022 to March 8, 2022. *See id.* at 4.

On May 20, 2022, Rainey filed his Petition with the trial court, asserting that Appellees violated the guarantee against cruel and unusual punishment set forth in the Eighth Amendment to the United States Constitution.[6] *See* O.R., Petition at 2-6 (citing *Rivera v. Pa. Dep't of Corr.*, 837 A.2d 525 (Pa. Super. 2003)).[7] Rainey did not identify with precision the basis for his constitutional claim, instead generally asserting that "the trauma and emotional infliction that [Appellees were] putting on [him constituted] cruel and unusual punishment." *Id.* at 6. Rainey insisted that "staff should take into consideration . . . [his] op[inion] regarding his[] own safety." *Id.* at 4.[8] In light of the allegations set forth in the Petition, it appears that Rainey's

---

[5] Rainey presumably refers to the Prison Rape Elimination Act, 34 U.S.C. §§ 30301-30309.

[6] Rainey also stated in the preamble to his Petition that Appellees violated the "due process and equal protection of the laws under the Pennsylvania Constitution[,] [a]rticle[ I], [s]ect[ions] 8, 13 and 26 and the . . . [Fourteenth] Amendment[] to the United States [Constitution.]" O.R., Petition at 1.

[7] "Although Superior Court cases are not binding on this Court, such cases may offer persuasive precedent where they address analogous issues." *Goshen Valley III Condo. Ass'n v. Messick*, 299 A.3d 1064, 1067 n.3 (Pa. Cmwlth. 2023) (citing *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 679 n.20 (Pa. Cmwlth. 2021)).

[8] Rainey stated that

> alternative placements can include, but are not limited to, anyone,
> or combination of, the following temporary options:
>
> a. moving to a different housing unit;

request for *habeas corpus* relief stems from the denial of his request to be housed without a cellmate and his placement in the restricted housing unit. *See id.* at 2-6. Rainey requested a hearing, an immediate emergency transfer to the State Correctional Institution at Chester and "Z-Code"[9] status. O.R., Petition at 6. Rainey also requested that the trial court hold Appellees liable for his attorney fees and costs, and $100,000 in damages for emotional and mental stress. *See id.*

Appellees filed an answer and a motion to dismiss pursuant to Section 6602(e)(2) of the Prison Litigation Reform Act (PLRA),[10] 42 Pa.C.S. § 6602(e)(2).[11]

---

b. placement in a cell closer to the corrections officer's desk within the unit;
c. placement in a single cell and
d. placement in the Special Needs Unit (SNU).

O.R., Petition at 4.

[9] "Z-Code" status apparently indicates single-cell classification. *See Frankenberry v. Ferguson* (Pa. Cmwlth., No. 105 C.D. 2017, filed July 12, 2017), slip op. at 2.

[10] 42 Pa.C.S. §§ 6601-6608.

[11] Section 6602(e) of the PLRA provides, in relevant part:

**(e) Dismissal of litigation.--**Notwithstanding any filing fee which has been paid, the court shall dismiss prison conditions litigation at any time, including prior to service on the defendant, if the court determines any of the following:

(1) The allegation of indigency is untrue.

(2) The prison conditions litigation is frivolous or malicious *or fails to state a claim upon which relief may be granted* or the defendant is entitled to assert a valid affirmative defense, including immunity, which, if asserted, would preclude the relief.

4

Trial Ct. Op., 2/15/23 at 1. Appellees requested dismissal on the basis that Rainey was not housed in a "double cell" at the time he sought *habeas corpus* relief and that he failed to state a claim that the conditions of his confinement amount to cruel and unusual punishment.[12] O.R., Br. in Supp. of Mot. to Dismiss, 7/20/22 at 4.

On August 11, 2022, the trial court held a hearing. Trial Ct. Op., 2/15/23 at 1. By order dated October 28, 2022, the trial court granted Appellees' motion and dismissed Rainey's Petition. *Id.*

Rainey appealed to this Court, and the trial court directed him to file a concise statement of errors complained of on appeal (concise statement) pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure (Appellate Rules), Pa.R.A.P. 1925(b). Trial Ct. Op., 2/15/23 at 1. In January 2023, Rainey filed his

---

42 Pa.C.S. § 6602(e) (emphasis added). Section 6601 of the PLRA defines the term "prison conditions litigation" as

> [a] civil proceeding arising in whole or in part under Federal or State law with respect to the conditions of confinement or the effects of actions by a government party on the life of an individual confined in prison. The term includes an appeal. *The term does not include* criminal proceedings *or habeas corpus proceedings challenging the fact or duration of confinement in prison*.

42 Pa.C.S. § 6601 (emphasis added). "Thus, a trial court cannot dismiss 'prison conditions litigation' . . . when the proceeding involves a criminal matter or *habeas corpus* petition challenging the fact or duration of confinement in prison[.]" *Pew v. Mechling*, 929 A.2d 1214, 1217 (Pa. Cmwlth. 2007) (citing Section 6601 of the PLRA, 42 Pa.C.S. § 6601) (italics added). Here, Rainey's Petition does not challenge the fact or duration of confinement, but rather the conditions of his confinement, *i.e.*, his transfer to the restricted housing unit and later to a cell with a cellmate.

[12] Appellees also sought dismissal of the Petition as moot, asserting that Rainey has been housed in a "single cell" since May 5, 2022. O.R., Br. in Supp. of Mot. to Dismiss, 7/20/22 at 3 (citing *Mistich v. Pa. Bd. of Prob. & Parole*, 863 A.2d 116 (Pa. Cmwlth. 2004)). Rainey presently contends that a cellmate was transferred to his cell on December 22, 2022. *See* Rainey's Br. at 4; *see also* O.R., Concise Statement of Errors Complained of on Appeal, 1/17/23 at 2.

5

concise statement, raising the following questions: (i) whether Appellees' counsel, Brian Platt, Esquire, committed fraud upon the court by representing in his filing and at oral argument on August 11, 2022 that Rainey has been in single-cell status housing since May 5, 2022; (ii) whether Rainey was placed in imminent danger on December 22, 2022 when Appellees placed another inmate in his cell despite his PREA status; and (iii) whether he is entitled to compensatory damages on the basis that he was subjected to cruel and unusual punishment under the Eighth Amendment to the United States Constitution when he was denied "self-lock up" and "administrat[ive] custody" status and received 75 days' "DC-time"[13] and five misconducts. O.R., Concise Statement, 1/17/23 at 1-2.

On February 15, 2023, the trial court filed an opinion pursuant to Appellate Rule 1925(a), "conclud[ing] that [Rainey's] conditions of confinement did not constitute 'cruel and unusual punishment' such that *habeas* relief could be granted and, accordingly, dismissed [his] Petition pursuant to [Section 6602(e)(2) of the PLRA,] 42 Pa.C.S. § 6602(e)(2)." Trial Ct. Op., 2/15/23 at 2 (citing *Commonwealth ex rel. Fortune v. Dragovich*, 792 A.2d 1257 (Pa. Super. 2002); *Frankenberry v. Ferguson* (Pa. Cmwlth., No. 105 C.D. 2017, filed July 12, 2017)).[14] Further, the trial court observed that Rainey himself acknowledged at the August 11, 2022 hearing that he was no longer in the "RHU" but in a "double cell" with no cellmate. *Id.* at 1-2.

---

[13] DC time presumably refers to time spent in disciplinary custody. *See DC-ADM 801, Inamte Discipline Procedures Manual*, Dep't of Corr. Policy Statement, Section 4(B)(4)(a), available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/801%20Inmate%20Discipline.pdf (last visited July 10, 2024).

[14] Unreported memorandum opinions of this Court issued after January 15, 2008 may be cited for their persuasive value. *See* Section 414(a) of this Court's Internal Operating Procedures 210 Pa. Code § 69.414(a).

## II. Issues

Before this Court,[15] Rainey argues that Appellees placed him in imminent danger when they transferred another inmate to his cell on December 22, 2022, despite his "PREA" status and his history of abuse and trauma. Rainey's Br. at 4. Rainey alleges that Appellees had agreed to house him alone in either a single or a double cell. *Id.* Rainey acknowledges that on May 5, 2022, he was transferred from the "RHU" to a cell without a cellmate, but he contends that Appellees' attorney committed a fraud upon the trial court by representing that "Rainey is and has been [in] single[-]cell status since May 5, 2022." *Id.* at 4-5. Rainey maintains that he "made out his case under the [Eighth] Amendment against [Appellees]," as they "plac[ed] [him,] . . . an abused PREA victim[,] in the 'RHU' for (75) days, which bec[a]me a mental issue/condition." *Id.* at 7 (quotation marks and hyphen omitted). Further, Rainey contends that this Court should "find [that he] could possibly be harmed based upon his [t]rauma, fears, and abuse, if placed in a double cell with another inmate[.]" *Id.* Rainey maintains that Appellees "knew or should have known" of a sufficient[ly] serious danger to [him]." *Id.* at 7 (quoting *Young v. Quinland*, 960 F.2d 351 (3d Cir. 1991)). Thus, Rainey contends that "[Appellees'] actions became cruel an[d] unusual" when they "[v]ictimiz[ed] a PREA victim like [himself] and add[ed] more trauma." *Id.* at 8 (additional quotation marks omitted).

Rainey asks this Court to "rescind" the decision of the trial court and remand this matter to the trial court "with direction to issue a Z-Code" and to "find that [Appellees violated his rights under the Eighth Amendment] by placing [him,]

---

[15] "Our review of the trial court's decision is limited to determining whether constitutional rights were violated, whether the trial court abused its discretion, or whether the trial court committed an error of law." *Pew v. Mechling*, 929 A.2d at 1217 (citation omitted) (reviewing a trial court order dismissing an inmate's petition for a writ of *habeas corpus*).

7

an abused PREA victim[,] in the "RHU" for []75[] days."  Rainey's  Br. at 5 & 7 (hyphen omitted).[16]  Further, Rainey seeks compensatory damages on the basis of his "unconstitutional placement in the 'RHU'" in the amount of $7,500, $100 for each of the 75 days spent in disciplinary custody in the restricted housing unit.  *Id.* Moreover, Rainey maintains that he "is entitled to at least AC[]status."[17]  *Id.* at 8.

Appellees counter that the exercise of discretion by prison administrators over inmate housing is not reviewable in a *habeas corpus* proceeding. Appellees' Br. at 7-8 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Meachum v. Fano*, 427 U.S. 215, 224-26, 96 (1976); *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1041 (Pa. Cmwlth. 2014); *Fortune*, 792 A.2d at 1259; *Frankenberry*, slip op. at 7-9).  Appellees contend that Rainey received misconducts as a result of his refusal to follow orders.  *Id.* at 8-9.  Further, Appellees contend that penological interests necessitated assigning Rainey's single cell to an inmate with a higher level of need.  *Id.* at 9.  Moreover, Appellees assert that Rainey fails to establish that the "mere prospect[]" or "even an actual move to a double cell with a cellmate amounts to cruel and unusual punishment," particularly where Rainey did not have a cellmate at the time he filed his Petition or at the time of oral argument before the trial court. *Id.* at 9.  Thus, Appellees maintain that Rainey failed to state a claim for *habeas corpus* relief because prison officials properly exercised discretion in assigning him to a particular prison cell.  *Id.* at 10 (citing *Rivera*, 837 A.2d 525; *Commonwealth ex rel. Ford v. Jeffes*, 394 A.2d 1004 (Pa. Super. 1978)).

Appellees also assert that a writ of *habeas corpus* is an extraordinary remedy that is available only after the petitioner has exhausted all other available

---

[16] Inconsistently, Rainey also requests that *this Court* "issue a Z-Code."  Rainey's Br. at 7.

[17] AC status presumably refers again to administrative custody status.  *See supra* note 4.

remedies. Appellees' Br. at 10 (citing *Commonwealth v. Reese*, 774 A.2d 1255 (Pa. Super. 2001)). Appellees maintain that Rainey should have first pursued relief by filing suit under Title 42, Section 1983 of the United States Code, 42 U.S.C. § 1983.[18] *Id.* (citing *Maute v. Frank*, 670 A.2d 737 (Pa. Cmwlth. 1986)).

### III. Discussion

"Any judge of a court of record may issue the writ of *habeas corpus* to inquire into the cause of detention of any person or for any other lawful purpose." Section 6502(a) of the Judicial Code, 42 Pa.C.S. § 6502(a). "The writ of *habeas corpus* is an extraordinary remedy that is available after other remedies have been exhausted or are ineffectual or nonexistent." *Dep't of Corr. v. Reese*, 774 A.2d 1255, 1260 (Pa. Super. 2001) (citation omitted). Thus, "*habeas corpus* should not be entertained . . . merely to correct prison conditions which can be remedied through an appeal to prison authorities or to an administrative agency." *Commonwealth ex rel. Bryant v. Hendrick*, 280 A.2d 110, 113 (Pa. 1971). "[I]t is [not] the function of the courts to superintend the treatment and discipline of prisoners in penal institut[]ions. This is the responsibility of those in charge of the prison itself and those officers, both state and local, who are given supervisory powers." *Id.*; *see also*

---

[18] Title 42, Section 1983 of the United States Code provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

*Fortune*, 792 A.2d at 1259 (citing *Commonwealth ex rel. Tancemore v. Myers,* 150 A.2d 180, 182 (Pa. Super. 1959)) (stating that "the failure or refusal of prison authorities to exercise discretion in a particular way may not be reviewed in a *habeas corpus* proceeding"). However, "*habeas corpus* is available to secure relief from conditions constituting cruel and unusual punishment, even though the detention itself is legal." *Bryant*, 280 A.2d at 113 (holding that "where the conditions of the confinement are so cruel and callous . . . the courts may grant relief through *habeas corpus* in order to protect the petitioner's fundamental and basic rights").

As the Supreme Court of the United States has explained,

> a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," *Wilson* [*v. Seiter*], . . . 501 U.S.[ 294,] . . . 298 [(1991)]; *see also Hudson v. McMillian*, . . . 503 U.S.[ 1,] . . . 5 . . . [(1992)]; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities," *Rhodes*[ *v. Chapman*,] 452 U.S. [337,] . . . 347 [(1981).] For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *See Helling* [*v. McKinney*,], . . . 509 U.S. [25,] . . . 35 [(1993)].

> The second requirement follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Wilson* . . . , 501 U.S. [at] 297 . . . (internal quotation marks, emphasis, and citations omitted). To violate the Cruel and Unusual Punishments Clause [of the Eighth Amendment], a prison official must have a "sufficiently culpable state of mind." *Ibid.*; *see also id.*, at 302-[]03, . . . [;] *Hudson* . . . , [] 503 U.S.[] at 8 . . . . In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety, *Wilson*, [] 501 U.S.[] at 302-[]03, . . . [,] *see also Helling*, [] 509 U.S.[] at 34-35, . . . ; *Hudson* . . . , [] 503

10

U.S.[] at 5 . . . ; *Estelle*[ *v. Gamble*,] 429 U.S.[ 97,] 106 [1976].

*Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994) (citations and footnote omitted).

Here, Rainey contends that Appellees violated the guarantee against cruel and unusual punishment secured in the Eighth Amendment to the United States Constitution by placing him in the restricted housing unit for 75 days without consideration for his status as an "abused PREA victim," because his placement allegedly resulted in "a mental issue/condition." Rainey's Br. at 7 (quotation marks and hyphen omitted). "[D]etermining the constitutionality of prison conditions is a heavily fact-specific inquiry, where the particular characteristics of the prisoner raising the challenge are taken into consideration." *Clark v. Coupe*, 55 F.4th 167, 183 (3d Cir. 2022). Although he averred generally that he was a victim of prior abuse, that he was on the "mental health roster" and that he had been placed on "suicide watch" for roughly one day during his confinement in the restricted housing unit, Rainey failed to specify the "particular characteristics" that rendered him susceptible to harm or the ramifications of the complained-of placement. *See* O.R., Petition at 4. Moreover, Rainey did not elaborate on the nature of his confinement in the restricted housing unit, such as whether it involved being placed in isolation or the extent of disciplinary restrictions. Given the sparseness of Rainey's allegations, it is impossible to evaluate whether the purported "deprivation" was "sufficiently serious," or whether the "conditions pos[ed] a substantial risk of serious harm" for purposes of his constitutional claim. *See Farmer*, 511 U.S. at 834. Further, Rainey did not allege that Appellees exhibited "deliberate indifference to [his] health or safety." *Id.* (quotation marks omitted); *cf. Clark*, 55 F.4th at 183 (holding that an inmate "put the [prison] officials' conduct squarely in the purview of established Eighth Amendment law" by alleging that prison officials "imposed

11

solitary confinement for months, knowing the isolation carried a substantial risk of exacerbating [the inmate's] mental illnesses but keeping him there until he suffered serious harm"; although the inmate "was initially placed in [isolation] for a justified penological purpose," his "increased incidents of hallucinations [and] self-mutilation resulting from the exacerbation of his schizophrenia and bi-polar disorder [could not] be deemed a legitimate part of his penalty for committing a disciplinary infraction") (additional quotation marks omitted); *see also Frankberry*, slip op. at 12-13 (agreeing with the trial court that "when viewed in the totality of the circumstances," the inmate failed to state a claim of cruel and unusual punishment under the Eighth Amendment, where the inmate alleged that time spent in a "double cell" that was not sufficiently spacious caused "physical and mental suffering").

Rainey also asserts that Appellees placed him in imminent danger by transferring a cellmate to his cell on December 22, 2022, despite his "PREA" status and his history of abuse and trauma. Rainey's Br. at 4. The failure of prison officials "to control or separate prisoners who endanger the physical safety of other prisoners" may support a claim of cruel and unusual punishment under the Eighth Amendment. *See Riley v. Jeffes*, 777 F.2d 143, 145 (3d Cir. 1985) (citation omitted). However, Rainey did not allege that Appellees compromised his physical safety by placing him in a "double cell." Rather, Rainey maintained that he "*could possibly* be harmed based upon his [t]rauma, fears, and abuse, *if* placed in a double cell with another inmate[.]" Rainey's Br. at 7 (emphasis added).[19]

---

[19] Regarding Appellees' contention that Rainey should have first pursued relief by filing suit under Section 1983, *see* Appellees' Br. at 10, we note that "Eighth Amendment claims are overwhelmingly brought as civil rights actions under Section 1983." *Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1040 n.12 (Pa. Cmwlth. 2014); *see also Fortune*, 792 A.2d at 1259-60 (citing *Johnston v. Lehman*, 609 A.2d 880, 884 (Pa. Cmwlth. 1992)) (holding that although the exercise of discretion by prison officials in superintending the placement of prisoners is "not immune from

Further, the narrow question of whether Appellees placed Rainey in "imminent danger" actually pertains to whether prison conditions litigation may withstand dismissal under the "three strikes" rule pursuant to Section 6602(f) of the PLRA, 42 Pa.C.S. § 6602(f). *See Brown v. Beard*, 11 A.3d 578, 580 (Pa. Cmwlth. 2010) (explaining that "[w]here a prisoner has been deemed an abusive litigator" after "fil[ing] three prison condition lawsuits that are dismissed as frivolous," and, thus, "loses the opportunity to proceed *in forma pauperis*," "the prisoner can escape dismissal of his prison conditions litigation under the ["]three strikes["] rule [set forth in Section 6602(f) of the PLRA, 42 Pa.C.S. § 6602(f),] only if he makes a credible allegation that he is in danger of imminent bodily harm and needs injunctive relief").[20]

Moreover, "[r]egardless of whether [Rainey's] allegations are true, they do not provide a cognizable basis for issuance of a writ of *habeas corpus*," where those allegations "assert primarily that his grievance arises from prison officials'

---

judicial scrutiny, [it is] appropriately addressed in a claim of deprivation of constitutional rights under color of state law as prescribed by . . . 42 U.S.C. § 1983").

[20] Regardless, Rainey's allegation that he "could possibly be harmed based upon his [t]rauma, fears, and abuse, if placed in a double cell with another inmate" does not rise to the level of "imminent danger" for purposes of Section 6602(f) of the PLRA, 42 Pa.C.S. § 6602(f). Rainey's Br. at 7; *see also Brown*, 11 A.3d at 581 (quoting *Commonwealth v. Capitolo*, 498 A.2d 806, 809 (Pa. 1985)) (explaining that "[t]o be imminent, the danger must be, or must reasonably appear to be, threatening to occur immediately, near at hand, and impending," and affirming the trial court's determination that an inmate failed to credibly allege that he was in imminent danger of serious bodily injury for purposes of Section 6602(f) of the PRLA, 42 Pa.C.S. § 6602(f), where the inmate asserted that "if [] sent back to [the previous correctional institution,] he might be subjected to the same treatment that he was allegedly subject to in 2008 and 2009, and that such treatment might aggravate his preexisting illnesses"); *Lopez v. Haywood*, 41 A.3d 184, 189 (Pa. Cmwlth. 2012) (affirming the trial court's revocation of an inmate's *in forma pauperis* status, concluding that the inmate's "alleg[ation] that he was on the *verge* of a mental breakdown as a result of being housed with mentally ill prisoners in the [restricted housing unit]" did not establish imminent danger of serious bodily injury for purposes of Section 6602(f) of the PLRA, 42 Pa.C.S. § 6602(f)).

exercise of discretion in superintending the placement of prisoners." *Fortune*, 792 A.2d at 1259 (citation omitted). As this Court has explained,

> [u]nder state law, an inmate does not have the right to confinement in a housing unit of his choosing. 37 Pa. Code § 93.11(a); *see Yount v. Dep't of Corr.*, 966 A.2d 1115, 1117 n.1 (Pa. 2009). Additionally, prison officials have discretion to transfer a prisoner for any reason or for no reason at all. *Meachum v. Fano*, 427 U.S. 215, 228 (1976); *Yount*, 966 A.2d at 1117 n.1. When adopting and executing policies and practices, "prison officials must be accorded wide ranging deference," as they are best situated to adopt solutions "that in their judgment are necessary to preserve internal order and to maintain institutional security." *Robson v. Biester*, 420 A.2d 9, 12 (Pa. Cmwlth. 1980) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). Federal law similarly holds that the placement of prisoners within the prison system falls within the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than the federal courts." *Meachum*, 427 U.S. at 225.

*Frankenberry*, slip op. at 8; *see also id.* at 9-12 (affirming the trial court's determination that an inmate failed to state a claim that prison officials violated the prohibition against cruel and unusual punishment contained in the Eighth Amendment by removing his single-cell classification, where the inmate alleged that "there is physical and mental suffering inherent in two men confined in a small space for extended periods of time").[21]

---

[21] Rainey also maintains that Appellees' attorney committed a fraud upon the trial court by representing that Rainey has been in a cell without a cellmate since May 5, 2022. *See* Rainey's Br. at 4-5. Rainey presumably asserts that this representation is fraudulent because it fails to take into account his allegation that a cellmate was transferred to his cell on December 22, 2022. We note, however, that Respondents' counsel could not have implied that Rainey was being housed in a cell without a cellmate as of December 22, 2022, as the trial court held the hearing concerning Appellees' motion to dismiss on August 11, 2022, and granted Appellees' motion by order dated October 28, 2022. *See* Trial Ct. Op., 2/15/23 at 1. Further, Rainey's allegation in his concise

14

Thus, we agree with the trial court that Rainey failed to state a claim of cruel and unusual punishment under the Eighth Amendment to the United States Constitution for purposes of supporting his request for *habeas corpus* relief. *See Farmer*, 511 U.S. at 834.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's grant of Respondent's motion to dismiss and the dismissal of Rainey's Petition.

_____
CHRISTINE FIZZANO CANNON, Judge

---

statement and his appellate brief that Appellees transferred a cellmate to his cell on December 22, 2022 does not constitute a fact of record which this Court may consider. *See Erie Indem. Co. v. Coal Operators Cas. Co.*, 272 A.2d 465, 467 (Pa. 1971) (explaining that "briefs are not part of the record, and the court may not consider facts not established by the record"); *Indem. Ins. Co. of N. Am. v. Bureau of Workers' Comp. Fee Rev. Hearing Off.*, 245 A.3d 1158, 1165 (Pa. Cmwlth. 2021) ("It is axiomatic that factual statements in a brief that have no basis in the certified record cannot be considered by an appellate court."); *Commonwealth v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007) (stating that "assertions that appear only in briefs and/or trial court opinions, are not to be considered," recognizing that "[i]n general, it is an appellant's burden to ensure that the certified record contains the documents reflecting the facts needed for review").

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kyle Rainey,                 :

            Appellant     :

                           :

        v.                    :

                           :

Kevin Ransom, Richardo Contreras,  :

Jasen Bohinski, Frank Depiero,     :   No. 528 C.D. 2023

Michael Goyne, and Richard Keller  :

# **O R D E R**

AND NOW, this 11th day of July, 2024, the October 28, 2022 order of the Court of Common Pleas of Luzerne County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge